WILMER CUTLER PICKERING
HALE AND DORR LLP
Andrea Weiss Jeffries (SBN: 183408)
andrea.jeffries@wilmerhale.com
Bethany Stevens (SBN: 245672)
bethany.stevens@wilmerhale.com
350 S. Grand Ave., Suite 2100
Los Angeles, CA 90071
+1 (213) 443-5300
+1 (213) 443-5400

J. Beckwith Burr (*pro hac vice*)
becky.burr@wilmerhale.com
Ali M. Stoeppelwerth (*pro hac vice*)
ali.stoeppelwerth@wilmerhale.com
Perry A. Lange (*pro hac vice*)
Perry.lange@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
+1 (202) 663-6000
+1 (202) 663-6363

Attorneys for Defendant
ICM Registry, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANWIN LICENSING, INTERNATIONAL S.A.R.L. and DIGITAL PLAYGROUND, INC. <br><br> Plaintiffs, <br><br> vs. <br><br> ICM REGISTRY, LLC, d/b/a .XXX; INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS; and DOES 1-10 <br><br> Defendants. | Case No. CV 11-9514-PSG (JCGx) <br><br> **DECLARATION OF GREGORY DUMAS IN SUPPORT OF DEFENDANT ICM REGISTRY, LLC'S MOTION TO STRIKE PLAINTIFFS' STATE LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16** <br><br> Date:   April 2, 2012 <br> Time:   1:30 p.m. <br> Place:  Courtroom 880 <br><br> Hon. Philip S. Gutierrez |

*(Left margin, vertical text)* Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

I, Gregory Dumas, hereby declare as follows:

1.      I am a consultant for defendant ICM Registry, LLC ("ICM"), and have served as the ICM Marketing Director since mid-2010.  I submit this declaration in support of ICM's Motion to Strike Plaintiffs' State Law Causes of Action Pursuant to California Code of Civil Procedure Section 425.16.  I have personal knowledge of the facts set forth herein, unless otherwise stated, and, if called upon to testify as a witness, I could and would competently testify thereto under oath.  All Exhibits to this Declaration are maintained in business records, in the ordinary course of my business.

2.      Prior to executing its contract with Internet Corporation for Assigned Names and Numbers ("ICANN"), ICM developed the "Founders Program."  In December 2010, a few months after the decision to proceed with the .XXX sTLD was made by ICANN, the Founders Program was formally launched and was available to leading companies within the online adult entertainment industry.  ICM's Founders Program was established to support expressive activities by members of the Sponsored Community, whereby early adopters of the .XXX sTLD could secure and develop domain names in anticipation of the official launch; the Founders Program closed on July 31, 2011.  Under the terms of the agreement applicable to participation in the program, "Founders" were allocated specific valuable .XXX domains which must contain unique content and not merely direct users to alternate TLDs.

3.      My responsibilities at ICM included helping businesses become "Founders" within the Founders Program.

4.      On or about April 13, 2011, Plaintiff Digital Playground, Inc. ("Digital Playground") expressed interest in participating in the Founders Program.  I spoke with Digital Playground's Chief Operating Officer, Farley Cahen, and explained to him the policies of the Founders Program.  After explaining the policies, Mr. Cahen sent me a long list of .XXX domains that Digital Playground wanted to use in connection with the Founders Program.  Despite communications between myself, on behalf of ICM, and Digital Playground, Digital Playground did not take actions

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

necessary to participate in the Founders Program prior to passage of the deadline for participation in the program, which was July 31, 2011.

5.   At some point during the Venus Tradeshow in Berlin, Germany, which ran from October 21-24, 2010, I, along with my ICM colleague, Claudio Menegatti ("Menegatti"), met with Manwin representative Fabian Thylmann ("Thylmann"). The Manwin representative informed Menegatti and me that Manwin saw the introduction of the .XXX sTLD as a threat to Manwin's dominance over the adult Internet industry. At that time, Thylmann said that he would do whatever he could to stop .XXX. Specifically, Thylmann said that if ICANN approved the .XXX sTLD, Manwin would file a lawsuit against ICM to disrupt its ability to conduct business.

6.   On December 20, 2010, I sent an email to Thylmann informing him of the launch of the Founders Program and suggesting that it might be a good opportunity for Manwin. Thylmann responded saying "…the .xxx domain is useless even if it comes to market, and I am not interested, just as I was not interested before." Attached as Exhibit 1 to this Declaration is a true and correct copy of this email correspondence.

7.   In September, 2011, Thylmann  initiated a conversation with my ICM colleague, Chief Business Development Officer, Jonathan Todd ("Todd") and me, during an industry event in London. Thylmann purported to be interested in reaching a mutually beneficial business deal between Manwin and ICM, and requested an in-person meeting with ICM's CEO, Stuart Lawley ("Lawley").

8.   I understand that this requested meeting was held between Lawley and Thylmann on September 23, 2011. In fact, I understand that two meetings were held on that date. I understand that at these meetings Manwin laid out a list of demands it wanted ICM to meet in order for Manwin to conduct business with ICM.

9.   On October 12, 2011, I attended what I understood to be a meeting with Manwin to follow up on the September 23 meetings. This follow-up meeting occurred at Manwin's offices in Montreal.

10.     During the meeting, Manwin's representatives refined the list of demands presented to my ICM colleagues in the September 23 meetings.  Specifically, at this meeting, Manwin demanded that ICM: allocate a minimum of several thousand .XXX domain names to Manwin free of charge; commit to prevent IFFOR from making any policies that ban or restrict the operation of user-generated content "tube" sites on .XXX domains; grant across-the-board discounts on all .XXX domain registrations; and allow Manwin to operate certain 'premium' or high value domain names, such as "tube.xxx," through a revenue sharing arrangement between Manwin and ICM. Thylmann  further stated that he needed the deal to include concessions by ICM that would put a positive "spin" on Manwin's involvement, so that it would appear that Manwin accomplished some positive impact for the industry when news of the deal was announced.

11.     Manwin threatened ICM by saying that if its demands were not met, it intended to spend several million dollars per year for the next several years tying up ICM in litigation.  ICM agreed to certain deal points, and submitted a counter proposal on others.  During the negotiations, Thylmann affirmed his intention to start a new trade group like the RIAA or MPAA, since, according to Thylmann, the Free Speech Coalition (a trade group representing certain segments of the adult industry) was not in a position to provide any real value for its members.

12.     Leaving the negotiations, I understood that further discussions would occur after the execution of appropriate confidentiality agreements.

//

//

//

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

13.     ICM received no further communication from Manwin until learning of the instant lawsuit.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

Executed on January __, 2012 at _____.


_____

Gregory Dumas

**Wilmer Cutler Pickering Hale and Dorr LLP**
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

1    13.   ICM received no further communication from Manwin until learning of

2  the instant lawsuit.

3    I declare under penalty of perjury, under the laws of the United States, that the

4  foregoing is true and correct.

5    Executed on January 13, 2012 at *Palm Beach Gardens, FL*

6

7

8    Gregory Dumas

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

DUMAS DECLARATION IN SUPPORT OF MOTION TO STRIKE          CV 11-9514-PSG (JCGx)
PURSUANT TO CAL. CIV. PROC. CODE § 425.16          4