WILMER CUTLER PICKERING
HALE AND DORR LLP
Andrea Weiss Jeffries (SBN: 183408)
andrea.jeffries@wilmerhale.com
Bethany Stevens (SBN: 245672)
bethany.stevens@wilmerhale.com
350 S. Grand Ave., Suite 2100
Los Angeles, CA 90071
+1 (213) 443-5300
+1 (213) 443-5400

Ali M. Stoeppelwerth (*pro hac vice*)
ali.stoeppelwerth@wilmerhale.com
Perry A. Lange (*pro hac vice*)
perry.lange@wilmerhale.com
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
+1 (202) 663-6000
+1 (202) 663-6363

Attorneys for Defendant
ICM Registry, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANWIN LICENSING, INTERNATIONAL S.A.R.L. and DIGITAL PLAYGROUND, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>ICM REGISTRY, LLC, d/b/a .XXX; INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS; and DOES 1-10<br><br>Defendants. | Case No. CV 11-9514-PSG (JCGx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ICM REGISTRY, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>Date: July 30, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 880<br><br>Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

I. INTRODUCTION ........................................................................................ 1

II. ARGUMENT ................................................................................................ 2

    A.    The *VeriSign* Decision Cannot Rescue The Amended Complaint ........... 2

        1.    The *VeriSign* Holding ..................................................................... 2

        2.    The Dispositive Distinctions Between the 2006 .com Agreement and ICANN's 2011 Approval of the .XXX TLD ........................................................................... 3

        3.    Plaintiffs' Allegations of Predatory Conduct Fail Under *VeriSign* ................................................................................ 5

    B.    Plaintiffs' Other Arguments Are Also Meritless ....................................... 6

        1.    Lack Of Antitrust Injury ................................................................. 6

        2.    No Unlawful Agreement................................................................. 8

        3.    The Extraordinary Nature of Plaintiffs' Requested Relief ............ 11

III. CONCLUSION ........................................................................................... 12

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

# TABLE OF AUTHORITIES

Federal Cases

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) .................................................................. 9, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 167 L. Ed. 2d 929, 127 S. Ct. 1955 (2007) ................................. 9

*CareFusion Corp. v. Medtronic, Inc.*,
  No. 10-01111, 2010 WL 4509821 (N.D. Cal. Nov. 1, 2010) ............................ 8

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
  479 U.S. 104, 93 L. Ed. 2d 427, 107 S. Ct. 484 (1986) ..................................... 7

*Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*,
  464 F. Supp. 2d 948 (N.D. Cal. 2006) ............................................................. 2

*Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*,
  611 F.3d 495 (9th Cir. 2010) ................................................ 1, 2, 3, 4, 5, 6, 9, 10, 11

*Glen Holly Entertainment Inc. v. Tektronix Inc.*,
  352 F.3d 367 (9th Cir. 2003) ............................................................................ 7

*Greco v. Verizon Communications, Inc.*,
  No. 03-00718, 2005 WL 659200 (S.D.N.Y. Mar. 22, 200) ............................ 12

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
  522 F.3d 6 (1st Cir. 2008) ................................................................................ 8

*In re Webkinz Antitrust Litigation*,
  695 F. Supp. 2d 987 (N.D. Cal. 2010) ............................................................. 7

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) .......................................................................... 9

*Monsanto Co. v. Spray-Rite Service Corp.*,
  465 U.S. 752, 79 L. Ed. 2d 775, 104 S. Ct. 1464 (1984) ................................ 11

*National Society of Professional Engineers v. United States*,
  435 U.S. 679, 55 L. Ed. 2d. 637, 98 S. Ct 1355 (1978) .................................. 10

*O'Shea v. Littleton*,
  414 U.S. 488, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974) ...................................... 8

*Pacific Bell Telephone Co. v. Linkline Communications, Inc.*,
  555 U.S. 438, 172 L. Ed. 2d 836, 129 S. Ct. 1109 (2009) .......................... 8, 12

*Sprint Nextel Corp. v. AT&T Inc.*,
  821 F. Supp. 2d 308 (D.D.C. 2011) ................................................................. 7

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
  No. 09-00560, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ........................... 7

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

DEF. ICM'S REPLY MEM. IN SUPPORT OF ITS MOT. TO DISMISS PLS.' FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)    ii    CV11-9514-PSG (JCGx)

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398, 157 L. Ed. 2d 823, 124 S. Ct. 872 (2004) .................................. 12

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

DEF. ICM's REPLY MEM. IN SUPPORT OF ITS MOT. TO DISMISS PLS.' FIRST AMENDED   CV11-9514-PSG (JCGx)
COMPLAINT PURSUANT TO RULE 12(b)(6)                iii

## I. INTRODUCTION

The Plaintiffs' Opposition makes very clear that they have a single-pronged strategy for surviving Defendants' motions to dismiss: to try and convince the Court that this lawsuit is a carbon-copy of another antitrust case involving ICANN and a TLD registry operator. *See Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.* (*"VeriSign"*), 611 F.3d 495 (9th Cir. 2010). In *VeriSign*, the Ninth Circuit held that the plaintiff's allegations of a conspiracy between ICANN and the long-time operator of the .com TLD to bypass a competitive-bidding provision in the existing agreement, modify the then-operative pricing provisions to allow VeriSign to charge more, and renew the contract prior to its expiration date were sufficient to withstand a motion to dismiss. 611 F.3d at 502-03. It affirmed, however, the district court's dismissal of the plaintiff's challenge to renewal of the .net registry agreement, because ICANN did exercise its rights under the competitive-bidding provision and there were no allegations indicating that the bidding process was not open to other parties. *Id.*

Wholly ignoring this second part of the *VeriSign* opinion, as well as the glaring factual differences between that case and this one, Plaintiffs repeatedly chant that the *VeriSign* decision is "dispositive." *See, e.g.*, Opp. at 1. But as explained below, the relevant ICANN conduct here is different—it centers on ICANN's unilateral decision to approve ICM's application to establish and operate a ***new*** TLD (.XXX)—through a process that **Plaintiffs admit was fully open to other applicants**. Opp. at 17. Moreover, in sharp contrast to the facts in *VeriSign,* ICANN here *rejected* ICM's applications several times before finally approving .XXX and, consistent with ICM's status as a new entrant (as opposed to a dominant, incumbent operator like VeriSign), the ICM contract contains no provisions restricting ICM's pricing.

Despite Plaintiffs' attempt to blur these fundamental distinctions, they preclude reliance on *VeriSign* as a basis for sustaining the Amended Complaint. And no other plausible grounds for permitting this case to proceed appear in the Opposition. Plaintiffs' arguments with respect to predatory conduct, antitrust injury, standing,

concerted action, and all the other elements of their claims are either belied by their own allegations or insufficient to meet the pleading standards required under Supreme Court and Ninth Circuit precedents. Having now had two opportunities to formulate their copycat *VeriSign* claim, Plaintiffs are not entitled to a third. The Amended Complaint should be dismissed with prejudice.[1]

## II. ARGUMENT

### A. The *VeriSign* Decision Cannot Rescue The Amended Complaint

#### 1. The *VeriSign* Holding

The plaintiff in *VeriSign* ("CFIT") contended that negotiations between ICANN and VeriSign to renew the registry agreements for operation of the .com and .net TLDs violated the Sherman Act. 611 F.3d at 499. Both TLDs had been awarded to VeriSign many years earlier, and at the time of these awards, ICANN entered into exclusive registry agreements ("the 2001 Agreements") with VeriSign for each TLD. *Id.* at 500. Likely reflecting VeriSign's position as the sole operator of two TLDs—one of which (.com) was and remains the dominant internet TLD[2]—both 2001 Agreements "imposed on VeriSign a price cap of $6 per year" for domain name registration and "contained a renewal provision that allowed ICANN to place the contract up for competitive bidding upon its expiration." *Id.*

After the 2001 .net agreement expired in 2005, "there was a competitive bidding process that resulted in the selection of VeriSign's bid." *Id.* In contrast, "[b]efore the 2001 .com agreement was due to expire in 2007 … VeriSign and

---

[1] Plaintiffs oppose the Court taking judicial notice of certain materials identified in ICM's Motion. Pls.' Opp. to Def. ICM's Req. for Judicial Notice. But all parties agree that the Court can take judicial notice of the .XXX registry contract. ICM Motion at 17 n.15; ICANN's Req. for Judicial Notice; Pls.' Req. for Judicial Notice. ICM disagrees with Plaintiffs' position on whether the other material ICM identified is properly the subject of judicial notice. *See, e.g.*, ICM Motion at 11 n.8. However, those materials are primarily useful as background and ICM does not depend on them as grounds for dismissal.

[2] *See Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 464 F. Supp. 2d 948, 952 (N.D. Cal. 2006) (recounting plaintiffs' allegations that "[t]he majority of domain name registrations for commercial purposes utilize the .com TLD").

1  ICANN agreed," *without opening the process to competitive bids*, "to extend it with a new contract (the '2006 .com Agreement')" that "increases the maximum price VeriSign [could] charge for domain name registrations." *Id*. at 500.  The 2005 .net agreement contained no express price increase provision—"[i]ts price cap of $4.25 per domain name expired on December 31, 2006, leaving no cap in its place." *Id.*

CFIT contended that both the 2005 .net and 2006 .com agreements were the product of unlawful collusion between ICANN and VeriSign.  611 F.3d at 502.  The Ninth Circuit found that CFIT had stated a § 1 claim only as to the 2006 .com agreement.  *Id.* at 502.  With respect to the 2005 .net agreement, the court found that, even though it contained an automatic renewal provision just like the one in the .com contract and eliminated all pricing restrictions, because it "was reached after a competitive bidding process," CFIT had failed to make out a § 1 violation.  *Id.* at 503.

The court's analysis of CFIT's § 2 claims followed the same pattern.  The attempted monopolization claim relating to renewal of the .com contract was reinstated because VeriSign had allegedly engaged in "predatory and harassing activities" that induced ICANN to agree to renew VeriSign's .com contract "without any competitive bidding" and on favorable terms.  611 F.3d at 505-06.  The § 2 claim relating to the .net agreement, on the other hand, was rejected since there were no allegations suggesting that VeriSign's predatory activities "had any bearing on the competitive bidding process that resulted in the 2005 .net agreement." *Id.* at 507.

2.  <u>The Dispositive Distinctions Between the 2006 .com Agreement and ICANN's 2011 Approval of the .XXX TLD</u>

According to Plaintiffs, the first lesson to be drawn from *VeriSign* is that "antitrust violations are stated by allegations that ICANN and a registry operator have colluded to suppress competition for the award of a TLD registry contract or to set above-market TLD prices."  ICANN Opp. at 4; *see also* Opp. at 6.  But the allegations in that case underpinning the court's finding of collusion were that ICANN had agreed with an incumbent registry operator (which controlled the dominant internet TLD) to

DEF. ICM'S REPLY MEM. IN SUPPORT OF ITS MOT. TO DISMISS PLS.' FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)       3                    CV11-9514-PSG (JCGx)

1  (1) renew a pre-existing contract without invoking an express provision that permitted
2  ICANN to solicit competing bids; and (2) to loosen pricing restrictions in the contract
3  in exchange for greater fees. 611 F.3d at 502-03.  The court's finding that this
4  collusion permitted VeriSign to set "above-market TLD prices" was based on public
5  statements by potential competitors of VeriSign "that, if awarded the .com contract,
6  they could and would offer registry services at or below $3 per domain name," a price
7  well below VeriSign's permitted rate. *Id*. at 503.
8       Plaintiffs' allegations in the Amended Complaint bear no resemblance to these
9  findings.  Instead of a pre-arranged deal to renew an existing contract on more
10 lucrative terms without competition from outsiders, this case involves ICANN's
11 ultimate approval (after multiple rejections) of an application for a *new* TLD in a
12 process *that Plaintiffs concede was open to—and in fact attracted—submissions*
13 *from other interested third parties*.  *See* Opp. at 16-17.  Nor is there any mention in
14 the Amended Complaint of statements from would-be competitors of ICM to the
15 effect that they are willing and able to offer .XXX registry services at lower prices.
16 Plaintiff's admission that the application process for new TLDs in both 2000 and 2004
17 was entirely open dooms their attempt to fit this case into a *VeriSign* box.  The 2005
18 .net Agreement granted VeriSign complete discretion to set its own prices and
19 provided for presumptive renewals (like the .com agreement), but the court held that
20 CFIT could not state an antitrust claim because ICANN had renewed the contract only
21 after an open, competitive process.  *VeriSign*, 611 F.3d at 503.
22       In an effort to avoid the fatal consequences of this distinction, Plaintiffs now
23 complain that although ICANN permitted open applications for new TLDs in 2000
24 and 2004, once it approved ICM's proposal for the .XXX TLD in 2011, it did not seek
25 out other potential registry operators to bid on the .XXX registry contract.  Opp. at 17.
26 They cite no authority requiring ICANN to bifurcate its process in this way, and for
27 good reason—there is none.  Although the Amended Complaint repeatedly cites
28 ICANN's Articles of Incorporation, bylaws, and agreements with the Department of

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

Commerce ("DOC"), it contains no reference to any provision requiring ICANN to decouple the process of approving a new TLD proposal from selecting (and contracting with) the operator of that TLD. Nor do the antitrust laws impose any such requirement.[3]

### 3. Plaintiffs' Allegations of Predatory Conduct Fail Under *VeriSign*

The second lesson from *VeriSign* that Plaintiffs contend controls this case is the court's supposed determination that "coercive campaigns by registries to induce ICANN's collusion are themselves predatory and actionable under the Sherman Act." ICANN Opp. at 4; *see also* Opp. at 19. In Plaintiffs' view, this holding salvages their § 2 claim, since the Amended Complaint is replete with allegations that ICM engaged in a variety of purportedly "predatory" lobbying efforts and "litigation tactics" designed to pressure ICANN to approve .XXX as an sTLD and enter into the registry contract with ICM. Am Compl. ¶ 39, 40, 47, 106. But here again, Plaintiffs ignore the fundamental differences between *VeriSign* and this case.

The activities found predatory in *VeriSign* included a lobbying campaign, financial pressure, and litigation threats, but, critically, all of this conduct was alleged to have led directly to ICANN's decision to forego competitive bidding and award the renewed 2006 .com contract to VeriSign on favorable terms. 611 F.3d at 506. Although Plaintiffs have tried to mimic those allegations, the facts alleged here get in their way. As the Amended Complaint itself makes clear, all of ICM's purported lobbying efforts were unsuccessful; ICANN responded to them by rejecting ICM's .XXX TLD proposal *on three separate occasions.* Am. Compl. ¶¶ 39, 43. With respect to the other alleged predatory conduct by ICM[4]—all of it constitutes bona fide litigation activity, which, as the *VeriSign* court confirmed, is immunized under the

---

[3] *See* ICM Motion at 18 n.19.

[4] *I.e.*, FOIA requests and a lawsuit filed by ICM against the State Department and DOC, ICM's (successful) filing of an IRP challenging ICANN's rejection of the .XXX TLD, and *bona fide* threats of litigation if ICANN did not adopt the IRP majority Declaration that ruled in ICM's favor.

---

*Noerr-Pennington* doctrine. 611 F.3d at 506.[5]

### B. Plaintiffs' Other Arguments Are Also Meritless

#### 1. Lack Of Antitrust Injury

In explaining why the Amended Complaint fails to establish antitrust injury, ICM identified in its Opening Brief the following deficiencies: (1) Plaintiffs' complaints about threatened "diversion of business" and lost profits describe, at best, hypothetical harm to themselves, not to competition; (2) none of these purported injuries could be attributed to any unlawful conduct on the part of ICM and ICANN; and (3) Plaintiffs' assertions of broader harm to consumers of websites offering adult content were wholly conclusory and, in any event, irrelevant, since neither ICM nor ICANN competes in that market. *See* ICM Motion at 10-13.

Plaintiffs have several responses to these arguments, but none is persuasive. First, they invoke *VeriSign* (again) for the propositions that (a) "concerted action between co-conspirators to eliminate competitive bidding for a contract is an actionable harm to competition" and (b) allegations that consumers are harmed by a conspiracy to eliminate competitive bidding "in the form of higher prices for registration of domain names" are sufficient to state antitrust injury. *VeriSign*, 611 F.3d at 502-03; Opp. at 7. These holdings are inapposite here, however, because, as explained above, Plaintiffs concede that ICANN's application process for new TLD's (including .XXX) was entirely open. In addition, the Ninth Circuit's finding of harm to purchasers of .com domain names was explicitly based on alleged statements by potential competitors of VeriSign that, if awarded the contract, they would offer registry services at prices well below VeriSign's. *Id.* at 503-04. The Amended Complaint, however, identifies no other registries who sought to operate a .XXX TLD

---

[5] In addition, as noted above, the improper object of the "predatory" coercion in *VeriSign* was ICANN's agreement to dispense with competitive bidding on the 2006 .com contract and modify the existing pricing provisions in VeriSign's favor, neither of which has been—or could be—plausibly alleged here. *See* ICM Registry Agreement (Exhibit 1 to Plaintiffs' Request for Judicial Notice).

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

and offer lower fees.  And the only potential harm to consumers it asserts—without any supporting factual allegations—is the danger of higher prices or lower quality services for *users of adult-content websites,* not prospective purchasers of .XXX domain names.  Am. Compl. ¶ 88.  These bare, speculative assertions—about a market in which neither ICANN nor ICM competes—do not establish antitrust injury.  *See Glen Holly Entm't Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2003) (antitrust injury requires a showing that the "injured party [is] a participant in the same market as the alleged malefactors"); *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 997 (N.D. Cal. 2010) (summary assertions of consumer harm insufficient to defeat motion to dismiss).

      Second, Plaintiffs contend that their failure even to seek to purchase defensive or affirmative registrations in .XXX does not preclude a finding of antitrust injury, since all they need to show for injunctive relief is "threatened loss or damage."  Opp. at 8.  The problem with this argument is that antitrust plaintiffs (even those seeking only an injunction) must demonstrate that their threatened injury is (1) due to unlawful conduct by the defendants; and (2) concrete and imminent, not mere conjecture about future possibilities.  *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2010 WL 3521979, at *10 (E.D. Cal. Sept. 3, 2010) ("[t]o have standing to seek injunctive relief under section 16 of the Clayton Act, a private plaintiff must allege that [it] has 'suffered loss or damage … that flows from that which makes defendants' acts unlawful'") (quoting *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113, 93 L. Ed. 2d 427, 107 S. Ct. 484 (1986); *Sprint Nextel Corp. v. AT&T Inc.*, 821 F. Supp. 2d 308, 317 (D.D.C. 2011) ("the [Clayton] Act does not authorize suits by those whose allegations of threatened injury amount to little more than conjecture").

      As explained in ICM's Motion, given Plaintiffs' failure plausibly to allege a conspiracy between ICM and ICANN,[6] none of ICM's conduct in operating the .XXX

---

[6]   ICM Motion at 14-17; *see also infra* at 8-11.

registry (*e.g.*, its prices, policies, or any other sales restrictions) violates the antitrust laws.[7]  Thus even if Plaintiffs' failure to seek defensive or affirmative registrations in .XXX could be linked to any aspect of ICM's operation of the registry, the purported "injury" that may result would not be attributable to any *unlawful* conduct by a defendant.  Moreover, having been unable to identify a single instance of "diversion of profits" or "lost business opportunities" due to the absence of an .XXX registration, Plaintiffs plainly have not met their burden of pleading an imminent and tangible threat of any harm, much less harm to competition in some relevant market.  *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008) (in order to obtain injunctive relief, an antitrust plaintiff "must face a threat of injury that is both 'real and immediate,' not 'conjectural' or 'hypothetical'") (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974)); *CareFusion Corp. v. Medtronic, Inc.*, 2010 WL 4509821 (N.D. Cal. Nov. 1, 2010) (dismissing complaint where plaintiff failed "to allege unlawful conduct that caused injury to [it] and to the market overall").[8]

### 2. No Unlawful Agreement

As explained in ICM's Motion, Plaintiffs fail to allege unlawful agreements because the Amended Complaint contains only conclusory assertions of conspiracy combined with facts describing purely unilateral conduct (or an obvious absence of agreement).[9]  ICM Motion at 14-17.  In response, Plaintiffs primarily argue that the

---

[7] *See* ICM Motion at 9-13; *Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 447-48, 172 L. Ed. 2d 836, 129 S. Ct. 1109 (2009) ("[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing").

[8] As such, Plaintiffs not only lack antitrust injury, but their claims are also too indirect and speculative for standing in any event.  *See* ICM Motion at 13 n.11.

[9] Plaintiffs now admit that their theories of antitrust injury and predatory conduct depend on the existence of an unlawful conspiracy between ICM and ICANN.  *See* Opp. at 7-9 (arguing anticompetitive pricing and conditions flowing from Defendants agreements are the sources of antitrust injury), 19 (agreements themselves and predatory conduct to induce agreement are Plaintiffs' basis for predatory conduct).  Since antitrust injury and predatory conduct are essential elements of every § 2 claim, Plaintiffs' failure to plead an illegal agreement sinks all of their claims.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

renewal and (lack of) pricing provisions of the .XXX registry contract make *that* agreement an antitrust violation under *VeriSign*. Opp. at 13-16. Here again, Plaintiffs misread *VeriSign*.

To begin with, contrary to Plaintiffs' assertion, the Ninth Circuit in *VeriSign* specifically rejected the argument that a "presumptive renewal provision" in a registry contract is "***alone*** sufficient to state Section 1 and Section 2 claims." *Compare* Opp. at 13 (emphasis in original), *with VeriSign*, 611 F.3d at 502-03. *VeriSign* held that provisions for automatic renewal (and setting higher prices) stated a claim only *in conjunction with* a properly-pleaded *preceding* agreement between ICANN and the incumbent operator of the existing (and dominant) .com TLD to eliminate competitive bidding for the .com contract. *VeriSign*, 611 F.3d at 503. By contrast, the court upheld dismissal of the challenge to the .net agreement, which had "comparable" provisions, because there was no allegation of an agreement to prevent competitive bidding for that contract when it expired. *Id.*

Here, once Plaintiffs' pleadings are stripped of conclusory labels (*Alvarez v. Chevron Corp.*, 656 F.3d 925, 930-31 (9th Cir. 2011)), the Amended Complaint alleges no such preceding agreement to eliminate competition for the .XXX registry contract. While Plaintiffs *assert* that there were "predicate" agreements in this case (Opp. at 12, 13), they do not (and cannot) do what they must to sustain their pleading—identify "evidentiary facts" in the Amended Complaint to support the purported agreement. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *see also* ICM Motion at 14-15, 17. The Amended Complaint describes ICANN's *unilateral* establishment of a process to approve proposals for new sTLDs, as well as the contracts to operate them, but no facts suggesting concerted action. *Id.*; *see also* Am. Compl. ¶ 55.[10] Moreover, Plaintiffs concede that the process ICANN

---

[10] In trying to avoid its consequences here, Plaintiffs misstate *Twombly*'s holding. Opp. at 18. The standard is not "facts sufficient … to suggest that an agreement *may* have been made" (*id.*), it is facts sufficient "to suggest that an agreement *was* made." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 167 L. Ed. 2d 929, 127 S. Ct. 1955 (2007) (emphases added). To be sure, Plaintiffs *assert* several times that ICANN

1   chose permitted others to submit competing applications. Opp. at 17. Thus, the
2   factual allegations in this case are, at best, analogous to the open .net process that
3   *VeriSign* upheld, not the .com collusion the court condemned. *VeriSign*, 611 F.3d at
4   503.
5         Plaintiffs' only response is to suggest that ICANN was somehow duty-bound to
6   have *another* round of competition for the .XXX registry contract itself, *after* ICM
7   had invested 10 years of time and money into getting .XXX approved over ICANN's
8   repeated rejections. Opp. at 14, 17. Plaintiffs cite no authority for this remarkable
9   assertion because none exists.[11] *VeriSign* itself is clear that "competitive bidding is
10  *not* required" to enter "exclusive" agreements even for *existing*, established TLDs like
11  .net—much less a completely new one like .XXX. *Id.* at 503 (emphasis added); *see*
12  *also National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692-96, 55 L. Ed.
13  2d. 637, 98 S. Ct. 1355 (1978).
14        Second, Plaintiffs concede there was no agreement between ICM and ICANN
15  on *what* prices to charge for .XXX registrations, instead arguing that there was an
16  agreement that ICM could *unilaterally* charge whatever it liked. Opp. at 14-16
17  (stating that ICANN "delegates to ICM all pricing and sales authority"); *see also* Am.
18  Compl. ¶ 56 (alleging that ICM has "complete price discretion" under its registry
19  agreement). That admission is fatal; antitrust law is concerned with agreements that
20  *fix* prices, not agreements that *fail* to fix them. *See* ICM Motion at 16.[12] Regardless,
21  *VeriSign* is clear: because the .XXX sTLD was approved through an open process
22  (Opp. at 16-17), a pricing agreement could not be condemned in any event. *VeriSign*,

---

"agreed, combined, and conspired with ICM" (Am. Compl. ¶¶ 55, 58, 72), but those are no more than "threadbare recitals of the elements of cause of action" that add no support to the claims. *Alvarez*, 656 F.3d at 930-31.

[11] Indeed, it makes no sense. Plaintiffs themselves state the obvious: "[a]pproval of the .XXX TLD had no value to ICM unless ICM also procured the registry contract." Opp. at 14. No one would go through the time and expense of applying to establish a new TLD only to be denied the opportunity to operate it.

[12] None of the authority Plaintiffs cite is to the contrary, or applicable here. All three cases involve agreements *among competitors* not to compete. Opp. at 15.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

611 F.3d at 501, 504 (comparable .net pricing provision upheld).

Finally, Plaintiffs' Opposition confirms that they have not (and cannot) allege any facts to support the supposed agreement to block approval of other "adult content TLDs." Opp. at 14-16. While Plaintiffs have finally identified the contract provision that they claim embodies the agreement, it plainly says nothing about blocking other adult-oriented TLDs, which Plaintiffs all but acknowledge. Opp. at 14 (admitting a lack of "crystal clarity").[13] Likewise, the allegations purporting to describe ICM's predictions about whether ICANN will approve other "adult content" TLDs (Opp. at 14), even if true (which they are not), do not describe an *agreement* to prevent approval. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768, 79 L. Ed. 2d 775, 104 S. Ct. 1464 (1984) (agreement requires "conscious commitment to a common scheme").[14]

### 3. The Extraordinary Nature of Plaintiffs' Requested Relief

Plaintiffs admit they seek orders that would enjoin .XXX altogether, void and require new bids for the .XXX registry contract, and "impose reasonable price constraints and service requirements" on .XXX registry offerings. Opp. at 22. Nevertheless, they contend that this extraordinary request does not support dismissal. Opp. at 23, 25.

---

[13] The provision in its entirety states: "ICANN and Registry Operator acknowledge that one of the criteria included in the application process in which the sTLD was selected, and in the previous TLD application expansion round, was that a new TLD be 'clearly differentiated from existing TLDs.' ICANN, when undertaking to effect the delegation of new TLDs, shall take into consideration Internet community input received, including any objections interested third parties may have under policy considerations or applicable law or otherwise, regarding the creation of new TLD strings." Exhibit 1 to Plaintiffs' Request for Judicial Notice, at 82 (.XXX Registry Contract Appendix S, Part 7). Clearly a general promise by ICANN merely to "*consider*" any third party's "input … including any objections" does not evidence an agreement to bar new TLDs of any sort—an interpretation borne out by the fact that a third party has recently applied for approval of a .SEX TLD. *See* ICANN Reply at 9.

[14] For the same reason, coupled with their failure to plead a relevant market for adult-content TLD affirmative registrations (as described in ICANN's motion), Plaintiffs have failed to allege a specific ICM intent to monopolize the supposed adult content TLD market, or a dangerous probability of its doing so. *See* ICM Motion at 23 n.26.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071

1   What Plaintiffs ignore, however, is that even the "simplest" form of relief they now propose—and the request in the Amended Complaint is much broader—would effectively require ICANN to completely rework the existing process it currently uses to select new TLDs and registries (which, as noted above, involves competition among applicants for new TLDs, but not a separate bidding process once a TLD proposal has been approved).  Moreover, as Plaintiffs concede, ICANN's duties—if not its choices—in connection with approving new TLDs and contracting with registries are governed by ICANN agreements with DOC, so for Plaintiffs to contend there is no governmental role to be considered in connection with their relief request is absurd.  *See* Am. Compl. ¶ 25.

Finally, it is difficult to see how determining whether a rebid process for the .XXX contract is "competitive" and whether price and service constraints on registry offerings are "reasonable" do not constitute tasks for which the Supreme Court has said the judiciary is ill-suited.  *See Linkline*, 555 U.S. at 452 ("[c]ourts are ill suited 'to act as central planners, identifying the proper price, quantity, and other terms of dealing'") (quoting *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408, 157 L. Ed 2d 823, 124 S. Ct. 872 (2004)).  A remedy request that would require this sort of court intervention in specifying and supervising the terms of dealing between private parties has repeatedly been held to support dismissal of an antitrust case.  *See, e.g.*, *Linkline,* 555 U.S. at 452 (holding that "[i]nstitutional concerns also counsel against recognition of [Plaintiffs antitrust] claims" where remedy requires judicial intervention in terms of dealing between private firms).[15]

### III.   CONCLUSION

For the foregoing reasons, ICM requests that Plaintiffs' Amended Complaint be dismissed with prejudice.

---

[15]   *See also Greco v. Verizon Commc'ns, Inc.*, 2005 WL 659200, at *3 (S.D.N.Y. Mar. 22, 2005) (one factor in plaintiff's failure to state an antitrust claim was that "the requested relief would require [the] court to assume a role for which it is ill-suited: to identify the proper … terms of dealing" between the parties).

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated:  June 29, 2012 | Respectfully Submitted, |
| 3 | | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 4 | | |
| 5 | | |
| 6 | | By: __/s/ *Andrea Weiss Jeffries*__ |
| 7 | | Andrea Weiss Jeffries |
| 8 | | Attorneys for Defendant ICM Registry, LLC |

*Wilmer Cutler Pickering Hale and Dorr LLP*
*350 South Grand Ave., Suite 2100*
*Los Angeles, CA 90071*

---