THOMAS P. LAMBERT (SBN 50952),
tpl@msk.com
JEAN PIERRE NOGUES (SBN 84445),
jpn@msk.com
KEVIN E. GAUT (SBN 117352),
keg@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:   (310) 312-2000
Facsimile:   (310) 312-3100

Attorneys for Plaintiffs and Counterclaim
Defendants Manwin Licensing International
S.A.R.L., a Luxemburg Limited Liability
Company (S.A.R.L.), and Digital Playground, Inc.,
a California Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANWIN LICENSING INTERNATIONAL S.A.R.L., a Luxemburg limited liability company (S.A.R.L.); and DIGITAL PLAYGROUND, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ICM REGISTRY, LLC, d/b/a .XXX, a Delaware limited liability corporation; INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS, a California nonprofit public benefit corporation; and Does 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.  CV11- 9514 PSG (JCGx)<br><br>The Honorable Philip S. Gutierrez<br><br>**COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OF ICM REGISTRY, LLC, OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN COUNTERCLAIM ALLEGATIONS**<br><br>**FRCP Rule 12(b)(6) and 12(f)**<br><br>Courtroom: 880 Roybal Federal Building<br><br>Date: February 11, 2013<br><br>Time: 1:30 p.m. |

Mitchell
Silberberg &
Knupp LLP

4993541.7

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 11, 2013, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 880, located at the Roybal Federal Building, 255 E. Temple Street, Los Angeles, CA 90006, Plaintiffs and Counterclaim Defendants Manwin Licensing International S.À.R.L. and Digital Playground, Inc. ("DP") (collectively "Manwin") will and hereby do move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing, with prejudice, the First Amended Counterclaims to First Amended Complaint filed by Defendant and Counterclaimant ICM Registry, LLC ("ICM"). In the alternative, Manwin will and hereby does move to strike certain portions of the First Amended Counterclaims under Rule 12(f) of the Federal Rules of Civil Procedure.

The motion to dismiss is made on the grounds that that ICM fails to state a claim for the following reasons:

- ICM's antitrust claims under Section 1 and Section 2 of the Sherman Act (*i.e.*, ICM's First, Second, Third and Fourth Claims) fail because (i) ICM did not adequately define any relevant market in which Manwin harmed competition, (ii) ICM did not allege and Manwin does not possess market or monopoly power in any of the purported markets that ICM identified, (iii) there has been no harm to competition in the markets that ICM identified; and (iv) ICM lacks antitrust injury or standing.

- ICM's First Claim under Section 1 of the Sherman Act also fails because ICM did not identify any actual agreements, as opposed to unilateral conduct, by Manwin.

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

- ICM's Second, Third and Fourth Claims under Section 2 of the Sherman Act also fail because ICM did not identify any anticompetitive or predatory acts on which to base its claims, and, *inter alia*, the *Noerr-Pennington* doctrine and the settlement privilege of Rule 408 of the Federal Rules of Evidence bar ICM's claims.

- ICM's Fifth Claim for false advertising under Section 43(a) of the Lanham Act fails because (i) ICM does not allege any commercial speech by Manwin containing false statements of material fact that were intended to divert business from ICM to Manwin, and (ii) the claim is barred by the *Noerr-Pennington* doctrine.

- ICM's state law claims for unfair competition under California Business and Professions Code Section 17200 (*i.e.*, ICM's Sixth Claim) and for tortious interference with prospective economic advantage (*i.e.*, ICM's Seventh Claim) fail because (i) both claims require ICM to prove that Manwin engaged in some independently unlawful conduct, which ICM cannot do, and (ii) the claims are barred by the litigation privilege of California Civil Code Section 47(b) and the *Noerr-Pennington* doctrine.

- ICM's tortious interference claim also fails because ICM did not identify any existing relationships that possessed a substantial probability of future economic benefit or allege that that Manwin had sufficient knowledge of such relationships.

The motion to strike is made on the grounds that the following allegations are impertinent and immaterial for the following reasons:

- All allegations related to the filing of, prosecution of, and press release related to this litigation are immaterial and impertinent because any claims based on those allegations are barred by the *Noerr-Pennington* doctrine

and/or the California litigation privilege of California Civil Code Section 47(b).

- All allegations related to settlement communications are impertinent and immaterial because any claims based on those allegations are barred by the *Noerr-Pennington* doctrine and the settlement privilege of Rule 408 of the Federal Rules of Evidence.

- All allegations regarding (i) price negotiations between ICM and Manwin, (ii) Manwin's alleged plans to start a new adult industry trade association, (iii) Manwin's allegedly disparaging statements regarding ICM, and (iv) Manwin's unilateral refusals to deal with ICM are impertinent and immaterial to ICM's First, Second, Third and Fourth Claims because such allegations fail as a matter of law to describe anticompetitive or predatory acts for Sherman Act purposes.

- All allegations related to supposed agreements between Manwin and third parties that ICM insufficiently describes without providing the purported parties to the agreements or the dates, times, or places of their making are impertinent and immaterial because such facts are required to plead a claim under Section 1 of the Sherman Act (*i.e.*, ICM's First Claim).

- All allegations related to ICM's Sixth Claim for compensatory and punitive damages under California Business and Professions Code Section 17200 are impertinent and immaterial because such damages are not viable under such a claim.

- All allegations regarding purported relationships between ICM and unidentified persons or potential relationships between ICM and identified or unidentified persons are impertinent and immaterial because such allegations do not identify existing, specific relationships with the

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

Mitchell Silberberg & Knupp LLP

4993541.7

1    probability of economic success for the purposes of ICM's Seventh Claim

2    for tortious interference with prospective economic advantage.

3    • All allegations stated under any Claim that the Court dismisses for failure to

4    state a claim are impertinent and immaterial for the reasons stated above

5    regarding the grounds for dismissal.

6    This motion is based upon this Notice of Motion; the attached Memorandum

7  of Points and Authorities; all pleadings and other records on file in this action; and

8  such further evidence and arguments as may be presented at or before any hearing

9  on the motion.

10    In compliance with Local Rule 7-3, counsel for Manwin and ICM have met

11  and conferred extensively on these matters, including by telephone on November

12  28, 2012.  Despite these efforts, the parties have been unable to resolve their

13  disputes.

14

15  DATED:  December 7, 2012          THOMAS P. LAMBERT
                                      JEAN PIERRE NOGUES
16                                    KEVIN E. GAUT
                                      MITCHELL SILBERBERG & KNUPP LLP
17

18
                                      By: /s/ Jean Pierre Nogues
19                                        Jean Pierre Nogues
                                          Attorneys for Plaintiffs and
20                                        Counterdefendants

21

22

23

24

25

26

27

28

5

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF
ICM REGISTRY, LLC**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................... 1

II.  BACKGROUND ...................................................................... 1

III. ICM'S SECTION 1 AND SECTION 2 CLAIMS FAIL ............................... 3

    A.   No Adequate Market Allegations ......................................... 3

        1.   Online Market ................................................... 3

        2.   Other Markets .................................................. 5

    B.   No Harm To Competition ................................................. 7

    C.   No Antitrust Standing Or Injury ......................................... 7

    D.   No Section 1 Agreements ................................................ 9

    E.   No Section 2 Anticompetitive Conduct ................................. 10

IV.  ICM'S ATTEMPT AND CONSPIRACY CLAIMS FAIL ....................... 14

V.   ICM'S LANHAM ACT CLAIM FAILS ....................................... 15

    A.   Manwin's Press Release Was Not Commercial Advertising ......................................................... 15

    B.   Manwin Did Not Make False Statements Of Material Fact ........................................................... 18

VI.  ICM'S STATE LAW CLAIMS FAIL ........................................ 20

    A.   ICM's UCL Claim Fails ................................................ 20

    B.   ICM's Tortious Interference Claim Fails ............................... 21

    C.   No State Claims May Be Based On This Lawsuit ....................... 24

VII. CONCLUSION .................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*ABC Int'l Traders v. Yamaha Corp. of Am.*,
No. CV-86-7892-RSWL, 1993 U.S. Dist. LEXIS 20947 (C.D. Cal. Jan. 28, 1993) ............. 13

*Action Apartment Ass'n, Inc. v. City of Santa Monica*,
41 Cal. 4th 1232, 63 Cal. Rptr. 3d 398 (2007) ...................................................... 24

*All One God Faith, Inc. v. Hain Celestial Grp., Inc.*,
No. C 09-03517 JF (HRL), 2010 U.S. Dist. LEXIS 59715 (N.D. Cal. May 24, 2010) ......... 17

*Am. Prof. Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof. Publ's.*,
108 F.3d 1147 (9th Cir. 1997) ................................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................. 10, 12

*Ashlar Inc. v. Structural Dynamics Research Corp.*,
36 U.S.P.Q.2d (BNA) 1402 (N.D. Cal. 1995) ................................................... 24

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) ........................................ 8

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990) .................................... 7

*Avery Dennison Corp. v. Acco Brands, Inc.*,
No. CV 99-1877 DT, 2000 U.S. Dist. LEXIS 3938 (C.D. Cal. Feb. 22, 2000) .................... 16

*Ballen v. City of Redmond*,
466 F.3d 736 (9th Cir. 2006) ................................................................... 16

*Barrus v. Sylvania*,
55 F.3d 468 (9th Cir. 1995) ................................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................... 6

*Boule v. Hutton*,
70 F. Supp. 2d 378 (S.D.N.Y. 1999) ............................................................ 16

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) .................................................................. 7

*Cargill Inc. v. Budine*,
CV-F-07-349-LJO-SS, 2007 U.S. Dist. LEXIS 67526 (E.D. Cal. Aug. 30, 2007).................. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
### (continued)

Page

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999)...................................................... 20, 21

*Clark v. Superior Court,*
    50 Cal. 4th 605, 112 Cal. Rptr. 3d 876 (2010) ....................................................... 21

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
    173 F.3d 725 (9th Cir. 1999) ................................................................................... 15

*Datel Holdings Ltd. v. Microsoft Corp.,*
    712 F. Supp. 2d 974 (N.D. Cal. 2010) ..................................................................... 8

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
    365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) ............................................ 13

*Edwards v. Arthur Andersen LLP,*
    44 Cal. 4th 937, 81 Cal. Rptr. 3d 282 (2008) ........................................................ 21

*Eichman v. Photomat Corp.,*
    880 F.2d 149 (9th Cir. 1989)................................................................................... 21

*eMove Inc. v. SMD Software Inc.,*
    No. CV-10-02052-PHX-JRG, 2012 U.S. Dist. LEXIS 55625 (D. Az. Apr. 20, 2012) ......... 19

*Encompass Ins. Co. v. Giampa,*
    522 F. Supp. 2d 300 (D. Mass. 2007) ..................................................................... 16

*Fantasy, Inc. v. Fogerty,*
    984 F.2d 1524 (9th Cir. 1993)................................................................................. 25

*Freecycle Network, Inc. v. Oey,*
    505 F.3d 898 (9th Cir. 2007)................................................................................... 18

*Fresno Motors, LLC v. Mercedes-Benz USA, LLC,*
    852 F. Supp. 2d 1280 (E.D. Cal. 2012) .................................................................. 23

*Fujitsu Ltd. v. Belkin Int'l, Inc.,*
    No. 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 164410 (N.D. Cal. 2012) ......................... 11

*Gentile v. Grand St. Med. Assoc.,*
    79 A.D.3d 1351, 911 N.Y.S.2d 743 (N.Y. 4th Dept. 2010).................................... 19

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977) .......................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

4993541.7

iii

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Image Tech. Servs. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) .............................................................................. 4

*In re Apple iPod iTunes Antitrust Litig.*,
    796 F. Supp. 2d 1137 (N.D. Cal. 2011) .............................................................. 12

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) .............................................................................. 15

*In re Late Fee and Over-limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ................................................................ 10

*Info. Control Corp. v. Genesis One Computer Corp.*,
    611 F.2d 781 (9th Cir. 1980) .............................................................................. 19

*Jack Russell Terrier Network of Northern Cal. v. Am. Kennel Club*,
    407 F.3d 1027 (9th Cir. 2005) ............................................................................ 18

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2000) .............................................................................. 15

*Kasparian v. County of Los Angeles*,
    38 Cal. App. 4th 242, 45 Cal. Rptr. 2d 90 (1995) ......................................... 22, 23

*Kearney v. Foley & Lardner, LLP*,
    590 F.3d 638 (9th Cir. 2009) .............................................................................. 24

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .............................................................................. 9

*Kentmaster Mfg. Co. v. Jarvis Prods. Corp.*,
    146 F.3d 691 (9th Cir. 1998) .............................................................................. 20

*Kinderstart.com, LLC v. Google Inc.*,
    No. C 06-2057 JF (RS), 2007 U.S. Dist. LEXIS 22637 (N.D. Cal. Mar. 16, 2007) .............. 12

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
    No. C07-01057 MJJ, 2008 U.S. Dist. LEXIS 68559 (N.D. Cal. Mar. 11, 2008) ..................... 4

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) ........................................... 20, 21, 23

*Kottle v. Northwest Kidney Ctrs.*,
    146 F.3d 1056 (9th Cir. 1998) ............................................................................ 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

4993541.7

iv

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

# TABLE OF AUTHORITIES
## (continued)

Page

*Language Line Servs. v. Language Servs. Assocs., LLC*,
    No. C 10-02605 JW, 2011 U.S. Dist. LEXIS 124836 (N.D. Cal. Oct. 13, 2011).................. 19

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998)........................................................................ 8

*Manwin Licensing Intern'l. S.À.R.L. v. ICM Registry, LLC*,
    No. CV 11–9514 PSG, 2012 U.S. Dist. LEXIS 125126 (C.D. Cal. Aug. 14, 2012) ............... 6

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
    271 F.3d 825 (9th Cir. 2001)........................................................................ 23

*Meridian Project Syst. v. Hardin Constr. Co.*,
    404 F. Supp. 2d 1214 (E.D. Cal. 2005).......................................................... 14

*MetroNet v. Qwest Services*,
    383 F.3d 1124 (9th Cir. 2006)........................................................................ 4

*Millenkamp v. Davisco Foods Int'l, Inc.*,
    562 F.3d 971 (9th Cir. 2009).......................................................................... 11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752, 104 S. Ct. 1464, 79 L. Ed. 2d 775 (1984) ..................................... 9

*Nat'l Black Expo v. Clear Channel Broad., Inc.*,
    No. 03 C 2751, 2007 U.S. Dist. LEXIS 9783 (N.D. Ill. Feb. 8, 2007) .................... 14

*New.Net, Inc. v. Lavasoft*,
    356 F. Supp. 2d 1090 (C.D. Cal. 2004)......................................................... 17

*Newcal Indus. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008)....................................................................... 3, 5

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*,
    838 F.2d 360 (9th Cir. 1988)......................................................................... 4

*OG Int'l Ltd. v. Ubisoft Entm't*,
    No. C 11-04980 CRB, 2012 U.S. Dist. LEXIS 145408 (N.D. Cal. Oct. 9, 2012) .............. 20

*People's Choice Wireless, Inc. v. Verizon Wireless*,
    131 Cal. App. 4th 656, 31 Cal. Rptr. 3d 819 (2005) ......................................... 20

*PNY Techs., Inc. v. SanDisk Corp.*,
    103 U.S.P.Q.2d (BNA) 1109 (N.D. Cal. 2012)............................................... 3, 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

4993541.7

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Porous Media Corp. v. Pall Corp.*,
201 F.3d 1058 (8th Cir. 2000) .................................................................. 16

*Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.*,
219 F.3d 92 (2d Cir. 2000) ...................................................................... 13

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
890 F.2d 139 (9th Cir. 1989) ..................................................................... 7

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ............................................................ 3, 4, 14

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) ................................................................. 15

*Rick-Mik Enters. v. Equilon Enters., LLC*,
532 F.3d 963 (9th Cir. 2008) ..................................................................... 3

*Rickards v. Canine Eye Registration Found., Inc.*,
704 F.2d 1449 (9th Cir. 1983) ................................................................. 22

*Roth v. Rhodes*,
25 Cal. App. 4th 530, 30 Cal. Rptr. 2d 706 (1994) .................................. 22

*RPost Holdings, Inc. v. Trustifi Corp.*,
No. CV 11-2118 PSG, 2011 U.S. Dist. LEXIS 117260 (C.D. Cal. Oct. 11, 2011) ............... 15

*Salma v. Capon*,
161 Cal. App. 4th 1275, 74 Cal. Rptr. 3d 873 (2008) .............................. 22

*Santa Fe Pointe, LP v. Greystone Servicing Corp.*,
No. C 07-5454 MMC, 2009 U.S. Dist. Lexis 67505 (N.D. Cal. July 29, 2009) .................... 21

*Sightline Payments, LLC v. Global Cash Access Holdings, Inc.*,
No. 2:10-CV-00397-PMP-PAL, 2010 U.S. Dist. LEXIS 80932 (D. Nev. Aug. 9, 2010) .............. 13

*Silberg v. Anderson*,
50 Cal. 3d 205, 266 Cal. Rptr. 638 (1990) ............................................. 24

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ................................................................... 13

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ........................................................... 18, 19

Mitchell
Silberberg &
Knupp LLP

4993541.7

vi

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

# TABLE OF AUTHORITIES
## (continued)

Page

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993) ...................... 14

*Sugar Instit., Inc. v. United States*,
   297 U.S. 553, 56 S. Ct. 629, 80 L. Ed. 2d 859 (1936) .......................... 11

*Tate v. PG&E*,
   230 F. Supp. 2d 1072 (N.D. Cal. 2002) ............................ 13

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008)............................................ 24

*Ticketmaster LLC v. Designer Tickets & Tours*,
   No. CV 07-1092 ABC, 2008 U.S. Dist. LEXIS 22236 (C.D. Cal. Mar. 10, 2008) ................. 8

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed 626 (1965) ................ 13

*United States v. Colgate & Co.*,
   250 U.S. 300, 39 S. Ct. 465, 63 L. Ed. 992 (1919) ................ 9

*United States v. Parke, Davis & Co.*,
   362 U.S. 29, 80 S. Ct. 503, 4 L. Ed. 2d 505 (1960) ................ 9

*United States v. Syufy Enters.*,
   903 F.2d 659 (9th Cir. 1990)............................................ 7

*Verizon Commc'ns., Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) ................ 10

*Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507, 49 Cal. Rptr. 2d 793 (1996) ................ 22

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000)............................................ 20

*William H. Morris Co. v. Group W, Inc.*,
   66 F.3d 255 (9th Cir. 1995)............................................ 18

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
   668 F.2d 1014 (9th Cir. 1981), *cert. denied*, 459 U.S. 825, 103 S. Ct. 57, 103 S. Ct. 58, 74 L. Ed. 2d 61 (1982) ............................ 11

*Zinser v. Cont'l. Grain Co.*,
   660 F.2d 754 (10th Cir. 1981)............................................ 8

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

Mitchell Silberberg & Knupp LLP

4993541.7

# TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

Cal. Bus. & Prof. Code
§ 17200 ................................................................................................................ 20

Cal. Civ. Code
§ 47(b) ................................................................................................................. 24

### OTHER AUTHORITIES

2 E. W. Kitner, et al., *Federal Antitrust Law* (2012)
§ 14.9 .................................................................................................................. 11
§ 11.1 ................................................................................................................... 9
§ 14.4 ................................................................................................................... 5

11 E. W. Kitner, et al., *Federal Antitrust Law* (2012)
§ 78.8 .................................................................................................................. 8

2 J. Gilson, et al., *Gilson on Trademarks* (2012)
§ 7.02 .................................................................................................................. 19

5 J. T. McCarthy, *McCarthy on Trademarks* (2012)
§ 27.35 ................................................................................................................ 18

3 N. M. Levy, et al., *California Torts* (2012)
§ 40.103 .............................................................................................................. 23

2 O. J. von Kalinowski, et al., *Antitrust Laws and Trade Regulation* (2d ed. 2012)
§ 26.01 ................................................................................................................ 14
§ 25.04 ................................................................................................................ 11
§ 25.03 ................................................................................................................. 7

3 O. J. von Kalinowski, et al., *Antitrust Laws and Trade Regulation* (2d ed. 2012)
§ 50.1 .................................................................................................................. 13

8 O. J. von Kalinowski, et al., *Antitrust Laws and Trade Regulation* (2d ed. 2012)
§ 161.02 ............................................................................................................ 7, 8

Fed. R. Civ. Proc.
8(a) ..................................................................................................................... 14
9(b) ..................................................................................................................... 15
12(f) .................................................................................................................... 25

Fed. R. Evid.
408 ...................................................................................................................... 11

Mitchell
Silberberg &
Knupp LLP

4993541.7

viii

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF
ICM REGISTRY, LLC**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Sued for blatant monopolization and price gouging in its operation of the .XXX Top Level Domain ("TLD"), defendant ICM Registry, LLC ("ICM") has responded by asserting (primarily antitrust) counterclaims of its own.  Its claims are deeply flawed for a variety of reasons, most fundamentally because ICM purports in the most conclusory way to argue that plaintiffs Manwin Licensing International S.À.R.L. and Digital Playground, Inc. (collectively, "Manwin") somehow monopolize an ill-defined "on line search" market indisputably dominated by internet giants like Google and Yahoo!.

Recognizing that Manwin could never monopolize such a market, ICM attempts a bait and switch and instead alleges Manwin's supposed sales volume in *other* purported "markets" – such as for adult "tube sites."  But those allegations do nothing to demonstrate Manwin's monopoly in a distinct online search market.  Moreover, those other "markets" would also fail antitrust prerequisites.  For example, they are inadequately defined, do not include all substitutable products, have virtually no barriers to entry or expansion, and are not (and cannot be alleged to be) monopolized by Manwin.

What ICM in fact alleges is no more than Manwin's vigorous and proper opposition to .XXX and ICM's own illegal practices.  Such opposition, including this suit, may displease ICM but does not negatively affect competition in any cognizable market and could never support an antitrust claim.  For these and the reasons explained below, all of ICM's counterclaims fail.

**II.    BACKGROUND**

Manwin, among other things, runs adult-content websites, and competes with other such sites for consumers of adult content.  First Amended Complaint ("FAC"), ECF No. 26 ¶¶ 1, 4, 5, 90-92.  Manwin sued ICM for antitrust violations

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

arising out of the establishment of .XXX, a new Top-Level Domain intended for adult content. *See generally id.* ICM is the "registry" operator for the .XXX TLD. ICM in turn authorizes separate companies called "registrars," such as GoDaddy.com, to sell .XXX TLD domain names to companies ("registrants") that wish to buy those names. *Id.* ¶ 22.

ICM has engaged in a variety of anticompetitive practices resulting in the sale of .XXX registry services at anticompetitive monopoly prices and with output restrictions. ICM, among other things, sells "defensive" .XXX registrations. Owners of trademarks (or of domain names in different TLDs), whether or not involved in providing adult content, must pay ICM to block others from using their (or similar) marks or names to designate .XXX websites. *Id.* ¶¶ 3(a)-(d), 60-64, 76-78. ICM has been largely decried for extorting .XXX defensive registrations at monopoly prices. *Id.* ¶ 83.

The Court has already entertained extensive briefing on Manwin's antitrust claims, largely upholding them against defendants' motions to dismiss. *See generally* ECF No. 40. ICM has now filed counterclaims against Manwin. *See generally* First Amended Counterclaims, ECF No. 65 (hereinafter "CC"). These are all based, in essence, on allegations that Manwin has disparaged .XXX and has refused to do business with .XXX or with those who do. ICM claims these acts are intended to thwart competitive threats posed by .XXX. Based on these allegations, ICM asserts against Manwin four claims for violations of Section 1 or 2 of the Sherman Act, and claims for violations of the Lanham Act, of California's unfair competition law, and of the common law prohibiting interference with prospective economic advantage. Manwin denies all of ICM's allegations, which for the following reasons fail to state a claim.

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

## III. ICM'S SECTION 1 AND SECTION 2 CLAIMS FAIL

### A. <u>No Adequate Market Allegations</u>

#### 1. Online Market

To state *any* Sherman Act claim, "plaintiff must allege that the defendant has market power within a 'relevant market.'" *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008) (emphasis added), *cert. denied*, 557 U.S., 129 S. Ct. 2788, 174 L.Ed. 2d 290 (2009). *See also Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 972 (9th Cir. 2008) ("A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint."). "The 'relevant market' and 'market power' requirements apply identically under the two different sections [(Sections 1 and 2)] of the Act[.]" *Newcal*, 513 F.3d at 1044 n.3.

To adequately plead "market power," plaintiff must allege "direct evidence showing the effects of anticompetitive behavior." *PNY Techs., Inc. v. SanDisk Corp.*, 103 U.S.P.Q.2d (BNA) 1109, 1115 (N.D. Cal. 2012) (dismissing complaint on 12(b)(6) motion). "Direct evidence" means allegations that defendant has "restricted output and [imposed] supracompetitive prices[.]" *Id.*; *see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("[E]vidence of restricted output and supracompetitive prices … is direct proof of the injury to competition which a competitor with market power may inflict, and thus, of the actual exercise of market power."), *cert. denied*, 516 U.S. 987, 116 S. Ct. 515, 133 L. Ed. 2d 424 (1995). Alternatively, plaintiff may plead "indirect evidence" of market power, *i.e.*, that "defendant owns a dominant share of that market," that "there are significant barriers to entry," and that "existing competitors lack the capacity to increase their output in the short run." *PNY*, 103 U.S.P.Q.2d (BNA) at 1115.

Mitchell Silberberg & Knupp LLP

4993541.7

3

1    To plead a Section 2 ***monopolization*** claim, plaintiff must plead not just

2    market power but also that defendant "possessed ***monopoly*** power in the relevant

3    market." *MetroNet v. Qwest Services*, 383 F.3d 1124, 1130 (9th Cir. 2006)

4    (emphasis added), *cert. denied*, 544 U.S. 1049, 125 S. Ct. 2300, 161 L. Ed. 2d

5    1089 (2005).  To do that, plaintiff must allege that the defendant controls at least

6    65% of the market or controls at least 50% of the market and that barriers to entry

7    and expansion exist.  *See Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d

8    1195, 1206 (9th Cir. 1997) ("Courts generally require a 65% market share to

9    establish a prima facie case of [monopolistic] market power."), *cert. denied*, 523

10   U.S. 1094, 118 S. Ct. 1560, 140 L. Ed. 2d 792 (1998); *PNY*, 103 U.S.P.Q.2d

11   (BNA) at 1115 (same); *Rebel Oil*, 51 F.3d at 1438 ("numerous cases hold that a

12   market share of less than 50 percent is presumptively insufficient" for a

13   monopolization claim).[1]

14   The required allegations of market and monopoly power cannot be

15   conclusory.  Rather, "Plaintiff must assert some facts in support of its assertions of

16   market power that suggest those assertions are plausible." *Korea Kumho*

17   *Petrochemical v. Flexsys Am. LP*, No. C07-01057 MJJ, 2008 U.S. Dist. LEXIS

18   68559, at *28-29 (N.D. Cal. Mar. 11, 2008) (citing *Bell Atl. Corp. v. Twombly*, 550

19   U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929, 941 (2007)), *aff'd*, 370

20   Fed. Appx. 875 (9th Cir. 2010).  *See also Cargill Inc. v. Budine*, CV-F-07-349-

21   LJO-SS, 2007 U.S. Dist. LEXIS 67526, at *24-5 (E.D. Cal. Aug. 30, 2007) (failure

22   to plead facts supporting assertion that defendant had "much if not all" of the

23   market required dismissal).

---

[1] In fact, even 65% or more of market share is probably insufficient alone absent barriers to entry and expansion. *See, e.g., Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 366 (9th Cir. 1988) ("[H]igh market share, though it may ordinarily raise an inference of monopoly power, will not do so in a market with low entry barriers or other evidence of a defendant's inability to control prices or exclude competitors.") (internal citation omitted).

Mitchell
Silberberg &
Knupp LLP

4993541.7

28

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

ICM fails to make the requisite allegations.  In both its Section 1 and Section 2 claims, ICM vaguely defines the relevant market as "online search for and access to adult entertainment via websites."  CC ¶¶ 50, 62, 69, 76.  Yet ICM does not allege, even in conclusory terms, that Manwin has the required power in that market, whatever it may be.  ICM certainly does not allege *facts* that, for example, Manwin controls price or output in such a market, has a high market share, or that such a market has high barriers to entry or expansion.  ICM does not plead such facts because it cannot.  Any purported online search market is huge and vibrant. It would obviously include every search engine in existence – Google, Yahoo!, Bing, and dozens of others – all of which can be used for searching for adult content.[2]

ICM's failure to allege the required market or monopoly power compels dismissal of its antitrust claims.  *See Newcal*, 513 F.3d at 1046 (affirming dismissal where "Newcal nowhere alleged that IKON holds market power … within those markets"); 2 E. W. Kitner, et al., *Federal Antitrust Law* § 14.4 (2012) (hereinafter "Kitner") ("[T]he failure to allege or offer any evidence of a particular market share will ordinarily be fatal.").

### 2.    Other Markets

While ICM utterly fails to allege market or monopoly power in the relevant "online search" market, it does conclusorily allege Manwin's significance in *other* ill-defined markets such as "online adult entertainment" or "adult tube sites" (that is, adult sites, which like YouTube, permit individual users to upload content).  CC ¶ 52.  But alleging market significance in *other* markets is wholly insufficient to satisfy ICM's obligation to allege power in its chosen "online search" market.

---

[2] Indeed, a simple search for "porn" on Google returns well over one billion results.

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

1    And even if ICM had premised its claims on those other markets (rather than

2  the online search market), those markets would fail to satisfy antitrust

3  prerequisites.  For example, Manwin plainly does not monopolize or have market

4  power in any market for online adult entertainment.  The market is huge and utterly

5  without barriers to entry or expansion.  (Anyone can quickly and easily establish

6  an adult website.)  Certainly, ICM alleges none of the required *facts* required to

7  show that Manwin has such market or monopoly power.  *See Twombly*, 550 U.S. at

8  557 (complaint must plead "facts" showing "plausibility" of claims).

9    On the contrary, ICM alleged facts establishing the opposite.  For example,

10  ICM admits that Manwin does not monopolize the online adult market, noting that

11  Manwin operates only the *second* most popular adult website, and that others

12  operate the first.  CC ¶ 17.  Moreover, ICM concedes that Manwin (along with

13  thousands of its competitors) provides free adult internet content.  CC ¶¶ 10-18.

14  Free is the exact opposite of a market characterized by supracompetitive prices.

15    Similarly, any "tube site" market is flawed.  ICM has equated tube sites with

16  free content (CC ¶¶ 9, 12, 15, 16).  That is plainly incorrect.  Sites can permit

17  uploading but still charge for certain views, or be free and not permit uploading,

18  and in fact most sites host both free and paid content.  FAC ¶ 1.  Even if those

19  definitional issues could be solved, adult tube sites are not a separate market.  As

20  this Court has already ruled, permissible antitrust markets must include all

21  available substitutes.  *Manwin Licensing Intern'l. S.À.R.L. v. ICM Registry, LLC*,

22  No. CV 11–9514 PSG (JCGx), 2012 U.S. Dist. LEXIS 125126, at *19 (C.D. Cal.

23  Aug. 14, 2012) ("A relevant market 'must encompass the product at issue as well

24  as all economic substitutes for the product.'") (quoting *Newcal*, 513 F.3d at 1045).

25  Adult tube sites and non-tube sites are obviously interchangeable because

26  consumers may view adult content on either.  ICM cannot plead otherwise.

27

28

Mitchell
Silberberg &
Knupp LLP

4993541.7

6

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF
ICM REGISTRY, LLC**

### B.   No Harm To Competition

Both Section 1 and Section 2 claims also require proof of conduct which "actually injures competition" within the defined market. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012), *cert. denied*, No. 12-171, 2012 U.S. LEXIS 8630 (Nov. 5, 2012). To meet that requirement, "plaintiffs must plead an injury to competition beyond the impact on plaintiffs themselves." *Id*. at 1198. *See also United States v. Syufy Enters.,* 903 F.2d 659, 668 (9th Cir. 1990) ("It can't be said often enough that the antitrust laws protect competition, not competitors.") *See also* 2 O. J. von Kalinowski, et al., *Antitrust Laws and Trade Regulation* § 25.03 (2d ed. 2012) (hereinafter "von Kalinowski") (mere harm to a competitor, unless it affects competition overall, not actionable).

ICM does not meet this element either. All ICM alleges is that Manwin engaged in conduct – such as refusing to deal with ICM, hard negotiating with ICM, or making disparaging statements – that hurt ***ICM***. What ICM does not allege is that hurting ***ICM*** adversely affects competition in the online search market. In fact, even ICM's complete demise would not affect Yahoo!, Google, Bing, the vigorously competitive market for online search, or consumer welfare.

### C.   No Antitrust Standing Or Injury

"[A] plaintiff must prove the existence of 'antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S. Ct. 1884, 1889, 109 L. Ed. 2d 333, 343 (1990) (internal citation omitted). In other words, "the antitrust violation must be a material or direct cause of plaintiff's injury." 8 von Kalinowski § 161.02.

A plaintiff has no antitrust injury if only derivatively harmed, *e.g.*, by injury to others who themselves directly participate in the affected market. *See, e.g., R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 148 (9th Cir. 1989)

Mitchell
Silberberg &
Knupp LLP

4993541.7

7

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF
ICM REGISTRY, LLC**

1   (en banc) (plaintiff leased land for producing geothermal steam, but did not

2   participate in the anticompetitive steam market; no antitrust injury because

3   "[plaintiff's] only direct, identifiable damages are those of a landlord"); *Associated*

4   *Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 539-40, 103

5   S. Ct. 897, 909, 74 L. Ed. 2d 723, 739 (1983) (construction workers' union lacked

6   antitrust injury required to sue contractors who boycotted its members; union's

7   injuries were only derivative of its members').[3]

8      In addition, in "the far-reaching decision of *Illinois Brick Co. v. Illinois*,

9   [431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977)], the Supreme Court held

10  that an indirect purchaser from an antitrust violator lacks standing to sue" for

11  damages.  8 von Kalinowsi § 161.02.[4]  The same principle "has also been held to

12  preclude an action by indirect sellers."  11 Kitner § 78.8.  *See also, e.g.*, *Zinser v.*

13  *Cont'l. Grain Co*., 660 F.2d 754, 760-61 (10th Cir. 1981) (*Illinois Brick* applies to

14  indirect sellers as well as indirect purchasers), *cert. denied*, 455 U.S. 941, 102 S.

15  Ct. 1434, 71 L. Ed. 2d 652 (1982).

16     Under these principles, ICM suffered no antitrust injury and lacks standing

17  to seek antitrust damages.  ICM is merely a registry operator which supplies

18  domain names to registrars, which then sell domain names to registrants (web site

19  operators).  ECF No. 29-1 at 4:12-15.  Those operators in turn supply adult content

---

[3] Similarly, plaintiff has no antitrust injury if merely derivatively harmed by participating in a secondary market adversely affected by anticompetitive behavior in a primary market.  *See, e.g., Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 992-94 (N.D. Cal. 2010) (no antitrust injury because plaintiff's harm was not in the affected online market but in a secondary aftermarket); *Ticketmaster LLC v. Designer Tickets & Tours*, No. CV 07-1092 ABC (JCx), 2008 U.S. Dist. LEXIS 22236, at *9-12 (C.D. Cal. Mar. 10, 2008) (no antitrust injury because counterclaimant did not participate in the primary affected market but only a secondary market).

[4] Nevertheless, "indirect purchasers are not barred from bringing an antitrust claim for injunctive relief" under Section 16 of the Clayton Act.  *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998) (Tashima, J., concurring).

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF
ICM REGISTRY, LLC**

websites to consumers.  ICM does not itself operate adult content websites, supply content to those sites, or provide or place/broker advertisements or links for such sites on other adult sites.  It merely supplies web addresses.  *Id.* at 3:16-17.  Any harm ICM allegedly suffered is thus derivative and indirect.

### D.   No Section 1 Agreements

To state a Section 1 claim, plaintiff must allege with adequate particularity an ***agreement*** restraining trade.  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 760-61, 104 S. Ct. 1464, 1469, 79 L. Ed. 2d 775, 783 (1984) (contract, combination or conspiracy required for Section 1 violation).  Businesses thus may ***unilaterally*** refuse to deal with a particular customer or unilaterally impose conditions upon which they will do business; and such unilateral conduct is never actionable under Section 1.  *Id.*  As stated in *Monsanto*:

> Independent action is not proscribed.  A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.  Under *Colgate*, the manufacturer can announce its resale prices in advance and refuse to deal with those who fail to comply.  And a distributor is free to acquiesce in the manufacturer's demand in order to avoid termination.

*Id.* (citations omitted).  *See also United States v. Parke, Davis & Co.*, 362 U.S. 29, 36, 80 S. Ct. 503, 508, 4 L. Ed. 2d 505, 511 (1960) (unilaterally setting terms of dealing not actionable); *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S. Ct. 465, 468, 63 L. Ed. 992, 997 (1919) (unilateral refusal to deal not actionable); 2 Kitner § 11.1 ("Section 1 does not apply to unilateral conduct.").

To ensure that plaintiff has identified an actionable agreement or conspiracy, rather than a mere unilateral refusal to deal or unilateral setting of terms, plaintiffs asserting Section 1 claims must specifically plead the person who made the alleged agreement, and the date, time and place of its making.  *See, e.g., Kendall v. Visa*

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

1   *U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (Section 1 claim properly

2   dismissed where "complaint does not answer the basic questions [about the alleged

3   action]: who, did what, to whom (or with whom), where, and when?"); *In re Late*

4   *Fee and Over-limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) ("The

5   complaint does include several conclusory allegations that the defendants agreed to

6   increase late fees, but it provides no details as to when, where, or by whom this

7   alleged agreement was reached.").

8       ICM has not alleged this requisite detail.  For example, ICM alleges that

9   Manwin – perfectly permissibly – unilaterally announced that it will not do

10  business with certain companies who also work with .XXX.  CC ¶ 37.  Later,

11  though, ICM conclusorily alleges that Manwin's unilateral conduct somehow

12  morphed into bilateral agreements – with, *e.g.*, spokesmodels, website operators,

13  and adult industry publications or trade shows – not to do business with ICM.  *Id.*

14  ¶¶ 53, 55, 72, 95-9.  But ICM never pleads the necessary detail to demonstrate that

15  such agreements in fact exist – there is no date, time, place or person.  These

16  allegations thus fail to support a Section 1 claim.  *See Ashcroft v. Iqbal*, 556 U.S.

17  662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) ("A pleading that

18  offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

19  of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).

20      ICM also alleges that Manwin made disparaging statements, tried but failed

21  to negotiate favorable terms with ICM, and "planned" to form a trade organization.

22  CC ¶¶ 30, 34, 36, 38, 45-46.  None of these things is an agreement, and so could

23  never be actionable under Section 1.

24  **E.    No Section 2 Anticompetitive Conduct**

25      A Section 2 claim requires that defendant has engaged in specific acts of

26  anticompetitive conduct to maintain its monopoly.  *Verizon Commc'ns., Inc. v.*

27  *Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407, 124 S. Ct. 872, 879, 157

28

L. Ed. 2d 823, 836 (2004) ("[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct."); 2 Kitner § 14.9 (willful anticompetitive acts required for monopolization claim). ICM has failed to allege the required anticompetitive acts.

**1.    Price negotiations.**  ICM alleges that Manwin negotiated vigorously to obtain reduced prices and other beneficial terms for .XXX service. CC ¶¶ 30, 31, 36.  But hard negotiation between a buyer and seller to reduce prices or for terms is the essence of competition.  It is not and could never be predatory.  2 von Kalinowski § 25.04 ("aggressive competition … is lawful").  In addition, the demands about which ICM complains were made during settlement negotiations. *See* ECF No. 22 ¶¶ 23-33 (declaration of ICM's Stuart Lawley, describing pre-suit letters and "negotiations" between ICM and Manwin, including express "threats" of litigation and related settlement "demands" and "counter proposals"); CC ¶¶ 30, 31, 34, 36.  Thus, the demands are protected by the settlement privilege under the Federal Rules of Evidence, Rule 408.  *See Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 980 (9th Cir. 2009) (pre-suit exchange of letters inadmissible); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 164410, at *17-18 (N.D. Cal. 2012) (pre-suit offer inadmissible).

**2.    Trade association "plans."**  ICM claims that Manwin made "plans" to form an adult industry trade association. CC ¶ 46.  But there is nothing inherently wrong with that. *See Sugar Instit., Inc. v. United States*, 297 U.S. 553, 558-59, 56 S. Ct. 629, 642, 80 L. Ed. 2d 859, 877 (1936) ("trade associations [unless they make agreements] with respect to prices or production or restraining competition, do not fall under the interdiction of the [Sherman] Act").  In any event, Manwin's mere intent or "plans," absent realization, could never be actionable. *See William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1028 (9th Cir. 1981) ("[E]vidence of intent alone, without

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

Mitchell Silberberg & Knupp LLP

4993541.7

1    corroborating evidence of conduct, cannot sustain a claim of attempted

2    monopolization."), *cert. denied*, 459 U.S. 825, 103 S. Ct. 57, 103 S. Ct. 58, 74 L.

3    Ed. 2d 61 (1982).

4        **3.    Disparaging statements.**  ICM alleges in wholly conclusory fashion

5    that Manwin made statements "denouncing" or "defaming" ICM.  CC ¶ 38, 45.

6    But disparaging statements generally are not anticompetitive for Section 2

7    purposes.  "While the disparagement of a rival … may be unethical and even

8    impair the opportunities of a rival, its harmful effects on competitors are ordinarily

9    not significant enough to warrant recognition under" the antitrust laws.  *Am. Prof.*

10   *Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof. Publ's.*, 108 F.3d 1147,

11   1151 (9th Cir. 1997) (citing *Brooke Group Ltd. v. Brown & Williamson Tobacco*

12   *Corp.,* 509 U.S. 209, 225, 113 S. Ct. 2578, 2589, 125 L. Ed. 2d 168, 187 (1993)).

13   For that reason, a plaintiff seeking to premise antitrust claims on disparaging

14   statements "must overcome a presumption that the [statements'] effect on

15   competition … was de minimis."  *Am. Prof'l Testing*, 108 F.3d at 1152.  This

16   presumption is overcome only by proof that the statements are: "(1) clearly false;

17   (2) clearly material; (3) clearly likely to induce reasonable reliance; (4) made to

18   buyers without knowledge of the subject matter; (5) continued for prolonged

19   periods; and (6) not readily susceptible of neutralization or other offset by rivals."

20   *Id*.  A plaintiff "must satisfy all six elements to overcome [the] de minimis

21   presumption."  *Id*.  *See also In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp.

22   2d 1137, 1145-46 (N.D. Cal. 2011) (same).

23       ICM nowhere pleads "facts" which "plausibl[y]" demonstrate that ICM can

24   overcome this presumption.  *See Iqbal*, 556 U.S. at 678.  Under such

25   circumstances, courts routinely dismiss at the pleading stage antitrust claims

26   premised on disparaging statements.  S*ee, e.g., Kinderstart.com, LLC v. Google*

27   *Inc.,* No. C 06-2057 JF (RS), 2007 U.S. Dist. LEXIS 22637, at *23-25 (N.D. Cal.

Mitchell
Silberberg &
Knupp LLP

4993541.7

28

12

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF
ICM REGISTRY, LLC**

Mar. 16, 2007); *Sightline Payments, LLC v. Global Cash Access Holdings, Inc.*, No. 2:10-CV-00397-PMP-PAL, 2010 U.S. Dist. LEXIS 80932, at *5-6 (D. Nev. Aug. 9, 2010); *Tate v. PG&E*, 230 F. Supp. 2d 1072, 1079-80 (N.D. Cal. 2002).

  **4.**  **This lawsuit.** ICM alleges that Manwin has threatened to file, filed, and then publicized this very suit in order to "delay or prevent commercialization of .XXX."  CC ¶¶ 20-21, 24-25.  But under the *Noerr-Pennington* doctrine,[5] lawsuits, or discussions or publicity about lawsuits, generally cannot form the basis of antitrust liability.  *See* 3 von Kalinowski § 50.1 (describing doctrine).[6]  "Sham" lawsuits are a narrow exception to the *Noerr-Pennington* bar.  But to meet that exception, a "plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships."  *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) (citing *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61, 123 L. Ed. 2d 611, 624-25, 113 S. Ct. 1920, 1928-29 (1993)), *cert. denied*, 525 U.S. 1140; 119 S. Ct. 1031; 143 L. Ed. 2d 40 (1999).  ICM has not factually or even conclusorily alleged the requisites to the sham exception.  Thus, the bar applies.[7]

---

[5] *See generally E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed 626 (1965).

[6] The doctrine bars claims based not only on the lawsuit but also on related letters and activities.  *See Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.*, 219 F.3d 92, 99-100 (2d Cir. 2000) (pre-suit "threat" letters and settlement discussions covered by doctrine); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940-41 (9th Cir. 2006) (doctrine covers discussions about lawsuit); *ABC Int'l Traders v. Yamaha Corp. of Am.*, No. CV-86-7892-RSWL, 1993 U.S. Dist. LEXIS 20947, at *14 (C.D. Cal. Jan. 28, 1993) (doctrine applies to "publicity … incident to a lawsuit").

[7] The alleged lawsuit threats are also independently barred under the settlement privilege.  *See* Subparagraph 1 above.

Mitchell Silberberg & Knupp LLP

4993541.7

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

**5.    Refusals to deal.**  Because, as explained in Section III(D) above, ICM does not adequately allege that Manwin's refusals to deal with .XXX were bilateral rather than unilateral, that conduct is not anticompetitive.

## IV.   ICM'S ATTEMPT AND CONSPIRACY CLAIMS FAIL

Attempted monopolization requires pleading, among other things, anticompetitive conduct, antitrust injury, and "a dangerous probability the defendant will achieve monopoly power in the relevant market."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884, 890-91, 122 L. Ed. 2d 247, 257 (1993).  "Dangerous probability" in turn requires showing that "defendant owns a dominant share" of the market with "significant barriers to entry" and that "competitors lack the capacity to increase their output in the short run."  *Rebel Oil*, 51 F.3d at 1434.  *See also Meridian Project Syst. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1224 (E.D. Cal. 2005) (failure to plead facts about dangerous probability compelled dismissal; "bare legal conclusion to that effect is insufficient to satisfy even Rule 8(a)'s liberal pleading standard").[8]  Conspiracy to monopolize requires similar pleading.  *See Nat'l Black Expo v. Clear Channel Broad., Inc.*, No. 03 C 2751, 2007 U.S. Dist. LEXIS 9783, at *28 (N.D. Ill. Feb. 8, 2007) ("[B]oth [attempt and conspiracy] claims require a showing that 'the alleged monopolist possess[es] enough power or potential power in this relevant market in order to harm competition.'") (internal citation omitted).  Thus, ICM's failure to plead these elements dooms its claims for attempted monopolization and conspiracy to monopolize, as well as its Section 1 and monopoly claims.

---

[8] *See* 2 von Kalinowski § 26.01 ("Courts typically will find a dangerous probability where the defendant has a market share of 50 percent or more.  Defendants with shares less than 30 percent are rarely determined to have a dangerous probability of succeeding.").

Mitchell Silberberg & Knupp LLP

4993541.7

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

## V.   ICM'S LANHAM ACT CLAIM FAILS

In its Fifth Counterclaim, ICM alleges that Manwin engaged in false advertising in violation of Section 43(a) of the Lanham Act.  Such a claim requires proof of:  (1) a false statement of fact about plaintiff's product or services; (2) in commercial advertisement or promotion; (3) which actually deceived or tended to deceive a substantial segment of its audience; and (4) which was material.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835, n.4 (9th Cir. 2000).  Moreover, plaintiff must plead each of these elements with particularity under Federal Rule of Civil Procedure 9(b).  *RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 11-2118 PSG (SHx), 2011 U.S. Dist. LEXIS 117260, at *8 (C.D. Cal. Oct. 11, 2011) (Gutierrez, J.) (collecting cases).  *See also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (stating requirements of Rule 9(b)).  ICM fails to allege these elements.

### A.   <u>Manwin's Press Release Was Not Commercial Advertising</u>

The basis for ICM's Lanham Act claim is Manwin's "press release about this very lawsuit."  CC ¶ 84.  To establish the "commercial advertisement" prerequisite to its Lanham Act claims, ICM must allege facts showing that:  (1) Manwin's press release was commercial speech; (2) Manwin is in commercial competition with ICM; (3) Manwin made the press release statements to influence consumers to buy Manwin's products or services; and (4) the statements were broadly disseminated to the relevant purchasing public.  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).  ICM cannot satisfy these elements, for at least two reasons.

*First*, Manwin's press release was not speech intended to persuade consumers to purchase its services.  "The core notion of commercial speech is 'speech which does no more than propose a commercial transaction.'"  *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (quoting *City of Cincinnati v.*

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF
ICM REGISTRY, LLC**

1    *Discovery Network, Inc.*, 507 U.S. 410, 422, 113 S. Ct. 1505, 1513, 123 L. Ed. 2d

2    99, 112 (1993)).  Moreover, commercial speech must be "'related *solely* to the

3    economic interests of the speaker and its audience.'"  *Ballen v. City of Redmond,*

4    466 F.3d 736, 742 (9th Cir. 2006) (quoting *Central Hudson Gas and Electric Corp.*

5    *v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561, 100 S. Ct. 2343, 2349, 65 L. Ed.

6    2d 341, 348 (1980)) (emphasis added).

7         The Manwin press release did not propose any commercial transaction;

8    instead, it merely described the lawsuit allegations about ICM's antitrust violations

9    in forming the .XXX TLD.  CC ¶ 84.  Nor was the press release *solely* about

10   Manwin's economic interests.  On the contrary, the press release and lawsuit more

11   generally allege that ICM's antitrust violations harm consumers and businesses

12   broadly, including businesses that are not potential Manwin customers.  FAC ¶¶ 3,

13   72-87.  Moreover, as ICM has admitted, issues about the formation of the .XXX

14   TLD are matters of broad *public* interest, not just Manwin's own narrow economic

15   interests.  *See* ECF No. 21-1 at 9:15 (ICM concedes that: "The public interest in

16   the creation of the .XXX domain has been overwhelming"); ECF No. 22 ¶ 37

17   ("intense public interest" in .XXX approval process); *id.* ¶ 38 (articles written

18   about ICM and the launch of .XXX "number into the thousands").

19        Indeed, for just such reasons, press statements about litigation or another's

20   illegal behavior are generally *not* commercial advertising or promotion within the

21   meaning of the Lanham Act.  *See Porous Media Corp. v. Pall Corp.*, 201 F.3d

22   1058, 1059 (8th Cir. 2000) (press release regarding litigation was not commercial

23   advertising or promotion); *Encompass Ins. Co. v. Giampa*, 522 F. Supp. 2d 300,

24   311 (D. Mass. 2007) (same); *Boule v. Hutton*, 70 F. Supp. 2d 378, 390 (S.D.N.Y.

25   1999) (response to interview question that plaintiff sold fake paintings was not

26   commercial speech even though defendants were plaintiff's competitors); *Avery*

27   *Dennison Corp. v. Acco Brands, Inc.*, No. CV 99-1877 DT (Mcx), 2000 U.S. Dist.

Mitchell
Silberberg &
Knupp LLP

4993541.7

28                                    16

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF
ICM REGISTRY, LLC**

1      LEXIS 3938, at *20-26 (C.D. Cal. Feb. 22, 2000) (defendant's letters to companies

2      labeling plaintiff's products as infringing were not "commercial").

3          ***Second***, ICM nowhere alleges (and cannot allege) that Manwin and ICM are

4      Lanham Act competitors.  Under "the Lanham Act, 'competitors' are 'persons

5      endeavoring to do the same thing and each offering to perform the act, furnish the

6      merchandise, or render the services better or cheaper than his rival.'" *New.Net,*

7      *Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1116 (C.D. Cal. 2004) (quoting *Kournikova*

8      *v. Gen. Media Commc'ns, Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003)).

9      Stated otherwise, Lanham Act competitors must be "vying for the same dollars

10     from the same consumer group." *Id.*

11         Manwin and ICM are not such competitors.  Manwin operates adult content

12     websites; ICM does not.  ECF No. 29-1 at 9:16-17 (ICM states: "ICM does not

13     compete with Manwin or DP in the operation of adult-oriented websites.").  ICM

14     provides TLD registry services; Manwin does not.  ECF No. 29-1 at 10:12-19;

15     FAC ¶¶ 1-3, 13-51.  Manwin competes for consumers who wish to view adult

16     content, while ICM competes to attract operators of adult websites.  For just such

17     reasons, ICM has repeatedly admitted in this very case that ICM and Manwin are

18     not competitors.  *See, e.g.*, ECF No. 29-1 at 13:12-15 (ICM states: "[N]either ICM

19     nor ICANN competes with Manwin … in that market," *i.e.*, the market consisting

20     of "consumers of websites offering adult content.").  ICM's failure to allege the

21     competition prerequisite dooms its Lanham Act claim.  *See Barrus v. Sylvania,* 55

22     F.3d 468, 469-70 (9th Cir. 1995) (12(b)(6) dismissal for to failure adequately to

23     allege that parties were competitors); *All One God Faith, Inc. v. Hain Celestial*

24     *Grp., Inc.*, No. C 09-03517 JF (HRL), 2010 U.S. Dist. LEXIS 59715, at *24-27

25     (N.D. Cal. May 24, 2010) (same).[9]

26

27     —————————————

[9] Because ICM and Manwin are not competitors, ICM also lacks Lanham Act
standing.  Standing for Lanham Act false advertising claims requires, among other
(…continued)

Mitchell
Silberberg &
Knupp LLP

4993541.7

28     17

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

## B.    <u>Manwin Did Not Make False Statements Of Material Fact</u>

The Lanham Act proscribes only false statements of material fact. It does not proscribe statements of opinion, mere puffery, other statements upon which a consumer is unlikely to rely, or statements which in context are not misleading. *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 904 (9th Cir. 2007) ("Statements of opinion are not generally actionable under the Lanham Act."); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ("'Puffing' is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a).") (internal citation omitted); *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995) (per curiam) (misrepresentation concerning the number of lawsuits was immaterial because unlikely to influence purchasing decisions); 5 J. T. McCarthy, *McCarthy on Trademarks* § 27:35 (2012) ("Plaintiff must make some showing that the defendant's misrepresentation was 'material' in the sense that it would have some effect on consumers' purchasing decisions.").

ICM's Fifth Claim alleges that Manwin's press release statements falsely assert that this lawsuit "reveals" ICM's "conspiracy to monopolize the .XXX domain" and "scheme … to monopolize[] the markets for .XXX registry services." CC ¶ 84. However, ICM concedes that the press release would not be false if it had stated that this lawsuit "alleges" rather than "reveals" the illegal conduct: ICM merely complains that the press release was false because the lawsuit "allegations were reported as established facts rather than mere unproven allegations." *Id.* ICM thus attempts to premise its claim on some presumed technical difference between what a lawsuit "reveals" and what it "alleges."

---

(…continued)
things, "competitive" injury, that is injury "harmful to the plaintiff's ability to compete with the defendant.'" *Jack Russell Terrier Network of Northern Cal. v. Am. Kennel Club*, 407 F.3d 1027, 1037 (9th Cir. 2005).

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

Mitchell Silberberg & Knupp LLP

4993541.7

This is too thin a reed.  Whether the press release used the word "reveals" or "alleges" is immaterial.  It plainly was accurately describing the allegations of the lawsuit, and so was not false or misleading.  *See Southland Sod Farms*, 108 F.3d at 1139 ("When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context."); 2 J. Gilson, et al., *Gilson on Trademarks* § 7.02 (2012) (courts "have to weigh each arguable misrepresentation in context").  Indeed, given that the press release was about the filing of an amended complaint, rather than a court decision, Manwin plainly was not asserting that the claims had already been proven in court, which, regardless, anyone could have easily discovered to be false had it been implied.  *See eMove Inc. v. SMD Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 U.S. Dist. LEXIS 55625, at *40 (D. Az. Apr. 20, 2012) (no falsity where it was "unlikely that the defendants would suggest" the purported false statement because the "assertion c[ould] be tested and proven false so easily").

Moreover, statements about legal claims are generally opinion which cannot deceive or be material to reasonable consumers.  *See, e.g., Language Line Servs. v. Language Servs. Assocs., LLC,* No. C 10-02605 JW, 2011 U.S. Dist. LEXIS 124836, at *33 (N.D. Cal. Oct. 13, 2011) ("Statements of opinion, including legal opinion, are not generally actionable as false statements under the Lanham Act."); *see also Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) ("[T]he audience may anticipate efforts by the [lawsuit] parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, (and thus) language which generally might be considered as statements of fact may well assume the character of statements of opinion.") (citation omitted); *Gentile v. Grand St. Med. Assoc.*, 79 A.D.3d 1351, 1353, 911 N.Y.S.2d 743, 745-746 (N.Y. 4th Dept. 2010) ("A civil lawsuit … is by its nature contentious and an average reader would recognize that statements made by the alleged wrongdoer in an

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

1    'advertisement' published under such circumstances are likely to be the product of

2    passionate advocacy.").[10]

3    **VI.    ICM'S STATE LAW CLAIMS FAIL**

4         **A.    ICM's UCL Claim Fails**

5         California's Unfair Competition Law ("UCL"), California Business and

6    Professions Code section 17200, "borrows violations of other laws and treats them

7    as unlawful practices that the unfair competition law makes independently

8    actionable." *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th

9    163, 180, 83 Cal. Rptr. 2d 548, 561 (1999) (quoting *State Farm Fire & Casualty*

10   *Co. v. Superior Court,* 45 Cal. App. 4th 1093, 1003, 53 Cal. Rptr. 2d 229, 234

11   (1996) (internal quotation marks omitted).  As a result, UCL claims also fail when

12   the "borrowed" violation fails.  *See, e.g.*, *Kentmaster Mfg. Co. v. Jarvis Prods.*

13   *Corp.*, 146 F.3d 691, 695 (9th Cir. 1998) (state UCL claims "fail for the same

14   reasons that the [borrowed] federal claims fail"); *People's Choice Wireless, Inc. v.*

15   *Verizon Wireless*, 131 Cal. App. 4th 656, 672, 31 Cal. Rptr. 3d 819, 831 (2005)

16   (dismissing UCL claim because borrowed antitrust claim failed).  Because ICM's

17   Sixth Claim is based on ICM's underlying antitrust and Lanham Act claims, the

18   UCL claim fails for the same reasons that those claims fail.

19        Also, even if ICM could state any UCL claim, ICM seeks remedies not

20   permissible under that statute.  *See, e.g., Korea Supply Co. v. Lockheed Martin*

21   *Corp.,* 29 Cal. 4th 1134, 1148, 131 Cal. Rptr. 2d 29, 41 (2003) (UCL permits no

22

23

24

25

26

27

---

[10] ICM's Lanham Act claim is also barred by the *Noerr-Pennington* doctrine. "While the *Noerr-Pennington* doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore, with one exception[, certain kinds of NLRB claims], applies equally in all contexts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000).  *See, e.g., OG Int'l Ltd. v. Ubisoft Entm't*, No. C 11-04980 CRB, 2012 U.S. Dist. LEXIS 145408, at *5-8 (N.D. Cal. Oct. 9, 2012) (*Noerr-Pennington* applies to copyright, trademark and unfair competition claims).  And as explained in Section III(E) above, *Noerr-Pennington* in particular applies to press releases about lawsuits, like the one upon which ICM relies for its Lanham Act claims.

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

1  "monetary remedies other than restitution," and in particular no damage claims);

2  *Cel-Tech,* 20 Cal. 4th at 179 (same); *Clark v. Superior Court,* 50 Cal. 4th 605, 610,

3  112 Cal. Rptr. 3d 876, 879 (2010) ("Not recoverable [under the UCL] are damages,

4  including punitive damages and increased or enhanced damages."). Accordingly,

5  the Court at minimum must strike ICM's demand for compensatory and punitive

6  damages under the UCL. *See* CC Prayer, ¶ 1.

7  ### B.   ICM's Tortious Interference Claim Fails

8  ICM's Seventh Counterclaim, for interference with prospective economic

9  advantage ("IPEA"), fails for at least three reasons.

10  ***First***, an IPEA claim requires pleading that the interfering conduct was

11  wrongful, independent of its mere interference. "[A]n act is independently

12  wrongful if it is unlawful, that is, if it is proscribed by some constitutional,

13  statutory, regulatory, common law, or other determinable legal standard."

14  *Edwards v. Arthur Andersen LLP,* 44 Cal. 4th 937, 944, 81 Cal. Rptr. 3d 282, 287

15  (2008) (internal citations omitted). *See also Korea Supply Co.,* 29 Cal. 4th at

16  1159-1160 (describing independent wrongfulness requirement). Here, the only

17  alleged independent wrongfulness is purported antitrust or Lanham Act violations.

18  But since (as explained above), ICM fails to plead those violations, it also fails to

19  plead independent wrongfulness. *See Santa Fe Pointe, LP v. Greystone Servicing*

20  *Corp.,* No. C 07-5454 MMC, 2009 U.S. Dist. Lexis 67505, at *33 (N.D. Cal. July

21  29, 2009) (where the independently wrongful acts are themselves the subject of

22  other defective claims, they cannot support an interference tort).

23  ***Second***, an IPEA claim requires pleading actual disruption of "a ***specific***

24  economic relationship between the plaintiff and some third person containing the

25  ***probability*** of future economic benefit." *Eichman v. Photomat Corp.,* 880 F.2d

26  149, 167-168 (9th Cir. 1989) (emphasis added). The tort may not be premised

27  upon an indeterminate or future relationship, one with unidentified persons, or one

28

Mitchell
Silberberg &
Knupp LLP

4993541.7

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

1  insufficiently developed to demonstrate probable future economic gain.  *See, e.g.,*

2  *Roth v. Rhodes*,  25 Cal. App. 4th 530, 546, 30 Cal. Rptr. 2d 706, 715 (1994)

3  (judgment on the pleadings affirmed because "[plaintiff] cannot have an existing

4  relationship with the speculative 'future patients,'" and "an existing relationship is

5  required"); *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456

6  (9th Cir. 1983) (veterinarians had no specific relationship with potential clients but

7  at most hoped for the formation of a relationship in the future); *Salma v. Capon*,

8  161 Cal. App. 4th 1275, 1291-92, 74 Cal. Rptr. 3d 873, 887 (2008) (motion to

9  strike should have been granted where plaintiff pled that it had existing contracts

10  with third parties but not additional, prospective business with those parties).[11]

11      ICM fails to allege with adequate detail current relationships, with identified

12  persons, sufficiently definite to pose the probability of economic success.  For

13  example, ICM alleges that "Manwin intended to disrupt the economic relationship

14  between ICM and [unidentified] industry members who intended to apply for …

15  .XXX registrations." CC ¶ 113.  ICM identified no existing relationship with these

16  merely prospective applicants.  Similarly, ICM alleges Manwin interfered with

17  "potential sponsorships" – not existing relationships – with industry publications or

18  trade groups.  CC ¶ 98.  ICM also alleges that Manwin interfered with undefined

19  "relationships" with unidentified "industry spokesmodels" (CC ¶ 99) but alleges

---

23  [11] *See also Kasparian v. County of Los Angeles*, 38 Cal. App. 4th 242, 261, 45 Cal. Rptr. 2d 90, 99 (1995) (while tort does not require an existing contract, it requires

24  "a contract which is certain to be consummated"); *Westside Ctr. Assoc. v. Safeway Stores 23, Inc.,* 42 Cal. App. 4th 507, 527, 49 Cal. Rptr. 2d 793, 806 (1996) (no

25  claim for interference of "relationship with the entire market of all possible but as yet unidentified" purchasers of plaintiff's property; "[w]ithout an existing

26  relationship with an identifiable buyer, [plaintiff's] expectation of a future sale was 'at most a[n unactionable] hope for an economic relationship …") (citing *Blank v.*

27  *Kirwan,* 39 Cal. 3d 311, 331, 216 Cal. Rptr. 718, 730 (1985)).

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

1  insufficient facts establishing those relationships as holding the probability of

2  economic benefit.[12]

3      ***Third***, an IPEA claim requires pleading that Defendant had ***specific***

4  ***knowledge*** of the definite relationship and of the probability that it would

5  economically benefit the plaintiff.  *Korea Supply*, 29 Cal. 4th at 1152 (plaintiff

6  must plead "that the defendant acted with the knowledge that its wrongful acts

7  were substantially certain to disrupt plaintiff's business expectancy"); 3 N. M.

8  Levy, et al., *California Torts* § 40.103 (2012) ("[K]nowledge by the defendant of

9  the plaintiff's prospective economic advantage is required.").  ICM also fails to

10  plead facts meeting this requirement.  ICM does not allege with any adequate

11  detail that Manwin knew about any particular and specific relationships holding the

12  probability of economic benefit.

13      Finally, even if ICM had adequately pleaded the IPEA tort with respect to

14  certain relationships, it plainly has not done so as to the entire hodgepodge of

15  alleged relationships.  At minimum, the Court should strike those portions of the

16  IPEA claim as to which the elements have not been pleaded.

17

18

19

_____

20  [12] ICM also alleges that Manwin purchased a company called Reality Kings, and
***then*** interfered with an agreement between ICM and Reality Kings to develop
21  .XXX websites.  CC ¶¶ 108, 114.  But the IPEA tort "can only be asserted against a
stranger to the relationship."  *Kasparian*, 38 Cal. App. 4th at 262.  As the Reality
22  King purchaser, Manwin is no such stranger.  *See Marin Tug & Barge, Inc. v.
Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001) ("an entity with a
23  direct interest or involvement in [a] relationship is not usually liable for harm
caused by pursuit of its interests"); *Fresno Motors, LLC v. Mercedes-Benz USA,
24  LLC*, 852 F. Supp. 2d 1280, 1293 (E.D. Cal. 2012) ("[U]nder California law, as
recognized by the Ninth Circuit, a claim for tortious interference of contract and
25  prospective economic advantage may only lie against 'strangers' or interlopers
who do not have a direct and significant interest in the plaintiff's contractual
26  relationship with another individual or entity. … [A] tortious interference claim
cannot also lie against a nonparty who has a direct economic interest and
27  involvement in the contractual relationship.").

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

1

## C.   <u>No State Claims May Be Based On This Lawsuit</u>

2       To the extent predicated on this lawsuit, or threats or press releases about

3   this lawsuit, ICM's state law claims also are barred by the *Noerr-Pennington*

4   doctrine, as explained in Section III(E) above.  The *Noerr-Pennington* bar applies

5   to both federal and ***state*** claims based on litigation conduct.  *See, e.g*., *Theme*

6   *Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008)

7   (*Noerr-Pennington* applies to state law interference claims).

8       In addition, the California litigation privilege independently bars ICM's state

9   law claims based on such litigation conduct, no matter their motivation or merits.

10   *See, e.g., Silberg v. Anderson*, 50 Cal. 3d 205, 215-216, 266 Cal. Rptr. 638, 644-

11   645 (1990) (explaining California's absolute litigation privilege); Cal. Civ.

12   Code § 47(b) (text of privilege); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638,

13   650 (9th Cir. 2009) (privilege covers pre-litigation conduct); *Action Apartment*

14   *Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251, 63 Cal. Rptr. 3d 398,

15   414 (2007) (privilege covers all communications related to intended litigation);

16   *Ashlar Inc. v. Structural Dynamics Research Corp.*, 36 U.S.P.Q.2d (BNA) 1402,

17   1408 (N.D. Cal. 1995) (privilege covers press release regarding filing lawsuit).  At

18   minimum, then, the Court must strike any allegations about this lawsuit.

19       ///

20       ///

21       ///

22       ///

23       ///

24       ///

25       ///

26

27

28

Mitchell
Silberg &
Knupp LLP

4993541.7

24

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**

1   **VII.   CONCLUSION**

2          The Court should grant the motion and dismiss all of ICM's claims.

3   Alternatively, the Court should, under the Federal Rules of Civil Procedure, Rule

4   12(f), at minimum dismiss those identified "impertinent [and] immaterial"

5   allegations upon which no claims could be premised.  *See Fantasy, Inc. v. Fogerty*,

6   984 F.2d 1524, 1527 (9th Cir. 1993) (under Rule 12(f), court may strike allegations

7   irrelevant to plaintiff's claims), *rev'd on other grounds*, 510 U.S. 517, 114 S. Ct.

8   1023, 127 L. Ed. 2d 455 (1994).

9

10  DATED:  December 7, 2012                THOMAS P. LAMBERT
                                            JEAN PIERRE NOGUES
11                                          KEVIN E. GAUT
                                            MITCHELL SILBERBERG & KNUPP LLP
12
                                            By: /s/ Jean Pierre Nogues
13                                          _____
                                               Jean Pierre Nogues
14                                             Attorneys for Plaintiffs and
                                               Counterdefendants
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

4993541.7

**MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS OR TO STRIKE ALLEGATIONS OF ICM REGISTRY, LLC**