Richard P. Sybert, Bar No. 80731
email rsybert@gordonrees.com
Hazel Mae B. Pangan, Bar No. 272657
email hpangan@gordonrees.com
Justin H. Aida, Bar No. 284606
email jaida@gordonrees.com
GORDON & REES LLP
101 W. Broadway, Suite 1600
San Diego, California 92101
tel (619) 696-6700 / fax (619) 696-7124

Bret A. Fausett, Bar No. 139420
email bret@internet.pro
INTERNET PRO APC
4640 Admiralty Way, 5th Floor
Marina Del Rey, California 90292
tel (310) 496-5755

Attorneys for Defendant
ICM REGISTRY, LLC d/b/a .XXX, a Delaware limited liability company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANWIN LICENSING INTERNATIONAL S.A.R.L., a Luxembourg limited liability company (s.à.r.l.) and DIGITAL PLAY-GROUND, INC., a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> ICM REGISTRY, LLC, d/b/a .XXX, a Delaware limited liability corporation; INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS, a California nonprofit public benefit corporation; and Does 1-10, <br><br> Defendants. | CASE NO.  CV 11-9514-PSG (JCGx) <br><br> *Honorable Philip S. Gutierrez* <br><br> **COUNTERCLAIMANT ICM REGISTRY, LLC'S OPPOSITION TO COUNTERDEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. SECTION 425.16 (ANTI-SLAPP)** |
| ICM REGISTRY, LLC, d/b/a .XXX, a Delaware limited liability corporation, <br><br> Counterclaimant, <br><br> vs. <br><br> MANWIN LICENSING INTERNATIONAL S.A.R.L., a Luxembourg limited liability company (s.à.r.l.); DIGITAL PLAY-GROUND, INC., a California corporation, and Does 11-20, <br><br> Counterdefendants. | |

# <u>TABLE OF CONTENTS</u>

**<u>PAGE</u>**

I.      INTRODUCTION .................................................................................. 1

II.     RELEVANT BACKGROUND ............................................................. 2

III.    LEGAL ARGUMENT .......................................................................... 4

        A.      Standard ..................................................................................... 4

        B.      ICM's State Law Counterclaims Do Not Arise Out of Protected
                Activity ...................................................................................... 5

                1.      ICM's State Law Counterclaims Are Not Based on
                        Manwin's Speech, Which In Any Event, Is Not Protected
                        Activity ........................................................................... 6

                2.      Counterdefendants' Boycott is Not Protected Activity
                        Because It Is Not Based On Political Expression ........................ 7

                3.      Manwin's Extortionate Demands Were Part of Business
                        Negotiations and Are Not Protected Activity ........................... 9

IV.     CONCLUSION .................................................................................. 12

- i -

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Braun v. Chronicle Publishing Co.,*
52 Cal.App.4th 1036 (1997) ...............................................................5

*Equilon Enterprises v. Consumer Cause, Inc.,*
29 Cal.4th 53 (2002) .........................................................................4

*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles,*
117 Cal. App. 4th 1138 (2004) ...........................................................7

*Feldman v. 1100 Park Lane Associates,*
160 Cal.App.4th 1467 (2008) ............................................................9

*Flatley v. Mauro,*
39 Cal.4th 299 (2006) .......................................................................5

*Fleming v. Coverstone,*
Case No. 08cv355WQH, 2009 U.S.Dist.LEXIS 22021
(S.D. Cal. Mar. 18, 2009) ................................................................10

*Haneline Pac. Properties, LLC v. May,*
167 Cal.App.4th 311 (2008) ..............................................................8

*Jarrow Formulas, Inc. v. LaMarche,*
31 Cal.4th 728 (2003) ....................................................................3, 4

*NAACP v. Claiborne Hardware Co.,*
458 U.S. 886 (1982) .......................................................................6, 7

*Navellier v. Sletten,*
29 Cal.4th 82 (2002) .........................................................................3

*Sipple v. Foundation for Nat. Progress,*
71 Cal.App.4th 226 (1999)..................................................................5

*State of Mo. v. Nat. Organization for Women,*
620 F.2d 1301 (8th Cir. 1980)..........................................................6, 7

*Taus v. Loftus,*
40 Cal.4th 683 (2007) ........................................................................4

*Wilcox v. Superior Court,*
27 Cal.App.4th 809 (1994)..................................................................6

*Wilson v. Parker, Covert & Chidester,*
28 Cal.4th 811 (2002) ........................................................................3

**Statutes**

California Business & Professions Code section 17200 .........................................0

California Civil Code section 47 ..................................................................5

## TABLE OF AUTHORITIES

**PAGE**

California Code of Civil Procedure section 425.16 .................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPPOSITION TO COUNTERDEFENDANTS' SPECIAL MOTION TO STRIKE PER C.C.P. § 425.16**
**CASE NO.  CV 11-9514-PSG**

Defendant and Counterclaimant ICM Registry, LLC ("ICM") responds as follows to the Motion brought by Plaintiffs and Counterdefendants Manwin Licensing International, S.A.R.L. ("Manwin") and Digital Playground, Inc. ("Digital Playground") (collectively, "Counterdefendants") to strike ICM's state law counterclaims.

## I.    <u>INTRODUCTION</u>

Of the 115 paragraphs of factual allegations in ICM's First Amended Counterclaims ("FACC"), Counterdefendants improperly seize upon a single clause in a prefatory statement in an attempt to cloak their wrongful conduct with the protections of California's anti-SLAPP statute.

In fact, the well-pled allegations of ICM's state law counterclaims for unfair competition under California Business & Professions Code § 17200 *et seq.* and for intentional interference with prospective economic advantage, are not based on any constitutionally protected conduct of the Counterdefendants.  Rather, *as is apparent* from the allegations of the Counterclaims, ICM's state law unfair competition and tortious interference claims are based on *unprotected* and unlawful activity by the Counterdefendants, including antitrust violations arising from illegal tying agreements, group boycotts and other anticompetitive conduct, as well as libel and interference with ICM's contracts and prospective advantage.

Additionally, even if ICM's state law counterclaims were based on protected activity, ICM has properly shown that its state law counterclaims are legally sufficient and substantiated, for the reasons specified in ICM's concurrently filed opposition to Counterdefendants' motion to dismiss (which opposition is incorporated herein), and by the facts alleged in the pleadings and in the evidence in support of the instant opposition and on file in this action.

Accordingly, Counterdefendants' motion should be denied, and ICM should be awarded its attorney's fees in opposing this motion.

///

## II.   RELEVANT BACKGROUND

ICM alleges two counterclaims arising out of state law: unfair competition under California Business & Professions Code § 17200 *et seq.*; and tortious interference with prospective economic advantage.  FACC, ¶¶ 90-115.  The factual predicate for these counterclaims is Counterdefendants' unprotected activity as follows, as alleged in detail at ¶¶ 55(a)-(h) and 94-100 of the Counterclaims:

- Engaging in horizontal agreements with third party affiliates in which the parties agree they will not compete for online adult entertainment search traffic in .XXX, and will confine their competitive activities to TLDs other than .XXX.

- Colluding with third parties to boycott content from shemale.xxx and ladyboy.xxx based upon the affiliation these sites have with .XXX.

- Engaging in improper "tying" arrangements with webmasters in which Counterdefendants condition the promotion of the webmasters' websites on Manwin's dominant tube sites on a boycott of the .XXX TLD.

- Engaging in harassment and coercion to extort high-value tube site names such as "tube.xxx" for below-market prices;

- Demanding that ICM allocate to Counterdefendants several thousand domain names at below-market prices and demanding assurances that neither ICM nor IFFOR will introduce any registry policies that limit or prevent tube sites on the .XXX domain registry.

- Improperly coercing industry groups to block the promotion of .XXX at adult entertainment events and gatherings in an attempt to improperly restrain the trade of ICM.

- Conditioning contracts with third parties on non-involvement with the .XXX TLD.

- Interfering with ICM's existing domain name contracts with third parties, including Really Useful, Ltd. and Reality Kings, and inducing breach of

those agreements and causing lost contractual opportunities with potential third party registrants.

Although the Counterclaims mention Manwin's public and private denunciations of the .XXX TLD in the adult entertainment industry, and Manwin's press release reporting as fact that ICM has committed antitrust violations, those statements are not pled as the factual predicates for ICM's state law counterclaims. *Id.* at ¶¶ 38, 45, 90-115.

Additionally, Counterdefendants' demands prior to the filing of this lawsuit were not made in the course of "settlement negotiations," but rather (and explicitly) in connection with business and contract negotiations for a possible joint venture between Manwin and ICM, including the possibility of Manwin's development of some of the prime category generic domains in the .XXX TLD.  See Ex. 1 to the Declaration of Stuart Lawley ("Lawley Decl.") submitted herewith.  Manwin's demands were related to the pursuit of a business venture, not its purported antitrust claims against ICM.  *Id.; see also* Lawley Decl., ¶ 2; Lawley Decl. in Support of ICM's Motion to Dismiss, Docket No. 22, ¶¶ 25, 27-33.

Specifically, in September 2011, Manwin's Managing Partner, Fabian Thylmann, approached ICM, based on Manwin's interest in doing business with ICM.  Lawley Decl., ¶ 2; Lawley Decl. in Support of ICM's Motion to Dismiss, Docket No. 22, ¶ 25.  On September 23, 2011 Stuart Lawley, ICM's CEO, had two meetings with Thylmann.  *Id.*  During the meetings, Thylmann then set forth a list of "non-negotiable" demands to be met by ICM  in order for Manwin to consider doing business with ICM.  *Id.* at ¶ 27.  Manwin's representatives subsequently refined its list of demands including (a) ICM's allocation of several thousand .XXX doman names to Manwin, free of charge, (b) ICM's commitment to circumvent the policy development process through which the Sponsored Community expressed its values with regard to policies concerning the operation of user-generated content "tube" sites in the. XXX domain, (c) across-the-board discounts on domain

- 3 -

1   registrations, and (d) the allocation of certain "preimum" or high value domain
2   names, such as "tube.xxx," to be operated by Manwin through a revenue share
3   agreement with ICM.  *Id.* at ¶ 29.  Although Thylmann mentioned litigation in
4   connection with Manwin's demands during the business development negotiations
5   between ICM and Manwin, at no time did he or any other representative of Manwin
6   make any reference to claims of antitrust violations by ICM in connection with the
7   .XXX TLD.  Lawley Decl., ¶ 3.  Indeed, these business development negotiations,
8   including Manwin's demands, were not impliedly or expressly stated by Manwin as
9   settlement discussions.  *Id.* at ¶ 4.  In fact, when ICM requested confidentiality
10  agreements for the business development discussions, Manwin indicated that
11  confidentiality agreements were not needed because nothing being discussed was
12  confidential.  *Id.*; Ex. 1 to Lawley Decl.  Notably, throughout these business
13  development negotiations and discussions, ICM anticipated that any joint venture or
14  arrangement reached between ICM and Manwin would be reduced to, and
15  memorialized in, a written contract between the parties.  Lawley Decl., ¶ 2.

16          Although Manwin mentioned litigation, Manwin's demands were related to
17  the pursuit of a business venture, not Manwin's antitrust claims against ICM.  *Id.* at
18  ¶ 3; *see also* Lawley Decl. in Support of ICM's Motion to Dismiss, Doc. 22, ¶¶ 25-
19  33.  Accordingly, Manwin's pre-suit demands are not protected activity and not
20  immunized by the anti-SLAPP statute.

21                          **III.    LEGAL ARGUMENT**
22  **A.    Standard**
23          "[T]he  anti-SLAPP statute neither constitutes—nor enables courts to
24  effect—any kind of 'immunity.'" *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th
25  728, 738 (2003).  When a "'complaint is both legally sufficient and supported by a
26  sufficient prima facie showing of facts to sustain a favorable judgment if the
27  evidence submitted by the plaintiff is credited' it is not subject to being stricken as
28  a SLAPP." *Id.* (citing *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821

- 4 -

(2002)).  The anti-SLAPP statute "does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning," rather, "it subjects to potential dismissal only those actions in which the plaintiff cannot 'state[] and substantiate[] a legally sufficient claim.'"  *Jarrow Formulas, supra*, 31 Cal.4th at 738 (citing *Navellier v. Sletten*, 29 Cal.4th 82, 93 (2002)) (alterations in original).

To apply the anti-SLAPP statute, the court must first determine "whether the [moving party] has made a threshold showing that the challenged cause of action is one arising from protected activity."  *Taus v. Loftus*, 40 Cal.4th 683, 703 (2007); *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002).  "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant []; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim."  *Jarrow Formulas, supra*, 31 Cal.4th at 728n10.

Counterdefendants cannot satisfy this test.  As outlined below, Counter-defendants have failed to establish that the claims at issue arise out of protected activity; and, in any event, ICM has established that its state law counterclaims are legally sufficient and supported by a sufficient *prima facie* showing of facts based on the pleadings, motions, and evidence on file in this case.  Accordingly, those counterclaims are not subject to being stricken under the anti-SLAPP statute.

**B.   ICM's State Law Counterclaims Do Not Arise Out of Protected Activity**

The proper inquiry on this Motion looks only to whether the allegations of Counterdefendants' anticompetitive conduct and interference outlined above (*not* Counter-defendants' speech in the form of Manwin's denunciation of the .XXX TLD or Manwin's press release, neither of which forms the basis of ICM's state law claims—this is a "red herring" raised by Manwin to justify its motion) is protected activity within the meaning of California's anti-SLAPP statute.  The answer to this

1    question is no.  As discussed below, the anti-SLAPP statute has no application to

2    Counterdefendants' unlawful activity underlying ICM's state law counterclaims and

3    Counterdefendants' motion should be denied.

4            1.     **ICM's State Law Counterclaims Are Not Based on Manwin's Speech, Which In Any Event, Is Not Protected Activity**

5

6          ICM's state law counterclaims are not based on Manwin's denunciation of

7    the .XXX TLD or its statements in its press release.  Although the Counterclaims

8    mention Manwin's public and private criticisms of the .XXX TLD in the adult

9    entertainment industry (FACC, ¶ 38), and also mention Manwin's press release as

10   wrongly reporting as fact that ICM has committed antitrust violations (*Id.* at ¶ 45),

11   those statements are not pled as the factual predicates for ICM's state  law

12   counterclaims.  *See id.* at ¶¶ 90-115.  Rather, the counterclaims explicitly allege

13   that the basis for and underlying facts of these claims are limited to Counter-

14   defendants' anticompetitive acts of engaging in tying arrangements, group boycotts,

15   tortious interference with ICM's contracts and economic advantage, and extort-

16   ionate demands flouting ICM and IFFOR's prescribed standards for registrations

17   within the .XXX TLD.  *Id.*  These facts and allegations have nothing to do with

18   Manwin's purportedly protected speech denouncing the .XXX TLD or its false

19   press release.  Counterdefendants intentionally attempt to mislead this Court by

20   pretending that these criticisms form the basis of ICM's counterclaims; they do not.

21         Further, Manwin's press release is not protected in any event.  Although

22   reports of judicial proceedings are generally an exercise of free speech, the privilege

23   applies only to a "fair and true report" in  "a judicial proceeding, or anything said in

24   the course thereof."  *Sipple v. Foundation for Nat. Progress*, 71 Cal.App.4th 226,

25   240, 242 (1999); Cal. Civ. Code § 47; *Flatley v. Mauro*, 39 Cal.4th 299, 323 (2006)

26   (courts look to the litigation privilege under Cal. Civ. Code § 47(b) "as an aid" in

27   determining whether a given communication falls within the ambit of § 425.16).

28   ///

1  The test is whether the report "captures the substance, the 'gist' or 'sting' of the

2  subject proceedings." *Braun v. Chronicle Publishing Co.*, 52 Cal.App.4th 1036,

3  1050 (1997).  This test measures the publication by its "'natural and probable effect

4  on the mind of the average reader.'"  *Id.* (internal citations omitted).

5          Here, Manwin's press release does not merely "report" or opine on the

6  proceedings in this lawsuit, it actually and falsely casts Counterdefendants' false

7  allegations as conclusive fact.  For example, the press release states: "Lawsuit

8  Reveals ICM Intended to Exploit the Defensive Registration Process to Reap Profits

9  and Conspired with ICANN to Monopolize the .XXX Domain TLD"; and, "[T[he

10  amended complaint adds new details about the illegal scheme by ICANN and ICM

11  to eliminate competitive bidding and market restraints in, and to monopolize, the

12  markets for .XXX registry services. These details include, for example, information

13  about how ICANN profited from the scheme, what ICM and ICANN discussed

14  about above-market pricing in the .XXX registry, and ICM's coercive acts intended

15  to secure ICANN's agreement to the scheme."  *See* FACC, ¶ 84 (ICM's federal

16  Lanham Act Counterclaim).  These statements, on their face, are not just reports or

17  opinion statements.  They are not couched as allegations but asserted as fact, and as

18  such are not protected by litigation privilege or the First Amendment.

### 2.    Counterdefendants' Boycott is Not Protected Activity Because It Is Not Based On Political Expression

21          Economic boycotts falling within protected activity are those that are

22  politically motivated.  *Wilcox v. Superior Court*, 27 Cal.App.4th 809, 820 (1994).

23  (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 894 (1982); *State of Mo.*

24  *v. Nat. Organization for Women*, 620 F.2d 1301 (8th Cir. 1980)).  "[U]sing a

25  boycott in a non-competitive political arena for the purpose of influencing

26  legislation is" neither illegal nor "proscribed by the Sherman Act."  *Id.* at 1315.

27          For example, in the *NAACP* case, 92 people boycotted white businesses in a

28  Southern city as a means of demanding racial equality and integration.  458 U.S. at

894.  The Supreme Court held that the boycotters were not liable for any damages
resulting from their withholding of business because this "boycott [was] a form of
speech or conduct that is ordinarily entitled to protection under the First and
Fourteenth Amendments.  The black citizens named as defendants in this action
banded together and collectively expressed their dissatisfaction with a social
structure that had denied them rights to equal treatment and respect . . . 'the
practice of persons sharing common views banding together to achieve a common
end is deeply embedded in the American political process.'"  *Id.* at 907-908.

Similarly, in *Nat. Organization for Women*, the National Organization of
Women (NOW) boycotted conventions in all states, including Missouri, that had
not ratified the Equal Rights Amendment ("ERA").  620 F.2d at 1315.  The Eighth
Circuit held that such a "boycott in a non-competitive political arena for the
purpose of influencing legislation" was protected activity.  *Id.* at 1315, 1321;
*accord Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles*, 117
Cal. App. 4th 1138, 1150 (2004) (economic boycott of plaintiff's stores by
advocates of workers' rights).  In essence, NOW used its "political power to bring
about the ratification of the ERA by the State of Missouri.  The tool it chose was a
boycott, a device economic by nature."  *Nat. Organization for Women*, 620 F.2d at
1315.

That is not this case at all, and frankly Counterdefendants disrespect the First
Amendment by trying to equate their selfish economic interests with genuine
political activity.  Here, Counterdefendants' boycott of the .XXX TLD is not
protected activity because it is not within a "non-competitive political arena" and is
not intended to influence legislation.  *Nat. Organization for Women*, 620 F.2d at
1315, 1321; *NAACP*, 458 U.S. at 894; *accord Fashion 21*, 117 Cal.App.4th at
1150.  Here, to the contrary, Manwin is simply trying to make money and protect
its market dominance, a conclusion bolstered by its extortionate demands.  Those
demands confirm that Manwin's boycott is motivated solely by pecuniary interests,

- 8 -

particularly because its attempts to partake in ICM's operation of the TLD were rebuffed.  *See* FACC, ¶ 21; *see also* Lawley Decl. in Support of ICM's Motion to Dismiss, Doc. 22, ¶¶ 25-33 (During the business development meetings between ICM and Manwin, "Thylmann then set forth a list of 'non-negotiable' demands to be met by ICM  in order for Manwin to consider doing business with ICM . . ." Manwin's representatives subsequently "refined its list of demands including (a) ICM's allocation of several thousand .XXX doman names to Manwin, free of charge, (b) ICM's commitment to circumvent the policy development process through which the Sponsored Community expressed its values with regard to policies concerning the operation of user-generated content 'tube' sites in the. XXX domain, (c) across-the-board discounts on domain registrations, and (d) the allocation of certain 'preimum' or high value domain names, such as 'tube.xxx,' to be operated by Manwin through a revenue share agreement with ICM").

### 3.  Manwin's Extortionate Demands Were Part of Business Negotiations and Are Not Protected Activity

Neither litigation privilege nor California's anti-SLAPP statute apply to statements made during negotiations where "the overall tone of the communi-cations is one of persuasion and a desire to cooperate to achieve mutual goals." *Haneline Pac. Properties, LLC v. May*, 167 Cal.App.4th 311, 319 (2008).  This is so even where there is mention of  "pursuing remedies," including litigation, because if negotiations fail because  "the same could be said of nearly any high-stakes negotiation."  *Id.* at 320.

Here, Manwin's demands prior to the filing of the instant lawsuit were made in connection with business development negotiations regarding a joint business venture between ICM and Manwin, including the possibility of Manwin's development of some of the prime category generic domains in the .XXX TLD and revenue sharing arrangement.  Lawley Decl., ¶ 2; Ex. 1 to Lawley Decl.; Lawley Decl. in Support of ICM's Motion to Dismiss, Docket No. 22, ¶¶ 25-33.

1    Specifically, in September 2011, Manwin's Managing Partner, Fabian
2    Thylmann, approached ICM, based on Manwin's interest in doing business with
3    ICM.  Lawley Decl., ¶ 2; Lawley Decl. in Support of ICM's Motion to Dismiss,
4    Docket No. 22, ¶ 25.  On September 23, 2011 Stuart Lawley, ICM's CEO, had two
5    meetings with Thylmann.  *Id.*  During the meetings, Thylmann then set forth a list
6    of "non-negotiable" demands to be met by ICM  in order for Manwin to consider
7    doing business with ICM.  *Id.* at ¶ 27.  Manwin's representatives subsequently
8    refined its list of demands including (a) ICM's allocation of several thousand .XXX
9    doman names to Manwin, free of charge, (b) ICM's commitment to circumvent the
10   policy development process through which the Sponsored Community expressed its
11   values with regard to policies concerning the operation of user-generated content
12   "tube" sites in the. XXX domain, (c) across-the-board discounts on domain
13   registrations, and (d) the allocation of certain "preimum" or high value domain
14   names, such as "tube.xxx," to be operated by Manwin through a revenue share
15   agreement with ICM."  *Id.* at ¶ 29.  Although Thylmann mentioned litigation in
16   connection with Manwin's demands during the business development negotiations
17   between ICM and Manwin, at no time did he or any other representative of Manwin
18   make any reference to claims of antitrust violations by ICM in connection with the
19   .XXX TLD.  Lawley Decl., ¶ 3.  Indeed, these business development negotiations,
20   including Manwin's demands, were not impliedly or expressly stated by Manwin as
21   settlement discussions.  *Id.* at ¶ 4.  In fact, when ICM requested confidentiality
22   agreements for the business development discussions, Manwin indicated that
23   confidentiality agreements were not needed because nothing being discussed was
24   confidential.  *Id.*; Ex. 1 to Lawley Decl.  Notably, throughout these business
25   development negotiations and discussions, ICM anticipated that any joint venture or
26   arrangement reached between ICM and Manwin would be reduced to, and
27   memorialized in, a written contract between the parties.  Lawley Decl., ¶ 2.
28   ///

1    Although Manwin mentioned litigation, Manwin's demands were related to

2  the pursuit of a business venture, not Manwin's antitrust claims against ICM.  *Id.* at

3  ¶ 3; *see also* Lawley Decl. in Support of ICM's Motion to Dismiss, Doc. 22, ¶¶ 25-

4  33.  Accordingly, Manwin's pre-suit demands are not protected activity and not

5  immunized by the anti-SLAPP statute.

6    Counterdefendants' reliance on *Feldman v. 1100 Park Lane Associates*, 160

7  Cal.App.4th 1467, 1480 (2008) is inapposite.  In *Feldman*, the court held that a

8  notice to quit in connection with a subsequent unlawful detainer action was "a

9  communication[] preparatory to or in anticipation of the bringing of an action or

10 other official proceeding" protected by the anti-SLAPP statute.  In other words, the

11 pre-suit communication in *Feldman* had a direct logical nexus to the subsequent

12 lawsuit.  *See id.*  Similarly, in *Fleming v. Coverstone,* Case No. 08cv355WQH,

13 2009 U.S.Dist.LEXIS 22021, at *13-14 (S.D. Cal. Mar. 18, 2009), the pre-suit

14 communications had "some connection or logical relation to the action," namely,

15 the communication—an email exchange—formed the very basis of the lawsuit,

16 which concerned the enforceability of the email exchange and a return of a deposit

17 based on those emails.  *Id.*

18    That is not this case.  Here, as outlined above, Manwin's pre-suit demands

19 related to business development and contract negotiations for a possible joint

20 venture between Manwin and ICM.  Ex. 1 to Lawley Decl; Lawley Decl., ¶¶ 2-4;

21 *see also* Lawley Decl. in Support of ICM's Motion to Dismiss, Doc. 22, ¶¶ 25-33.

22 Indeed, at no point did Manwin make any reference to its later-manufactured

23 antitrust claims against ICM.  Lawley Decl., ¶ 3.  Accordingly, Manwin's pre-suit

24 demands have no logical nexus to Counter-defendants' antitrust claims in this action

25 and therefore are not protected statements within the meaning of the anti-SLAPP

26 statute.

27 ///

28 ///

- 11 -

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Counterdefendants fail to make a *prima facie* showing that ICM's state law counterclaims arise out of Counterdefendants' protected activity.  As such, Counterdefendants have failed to shift any burden to ICM to show that ICM's counterclaims are legally sufficient.

In any event, ICM has properly shown that its state law counterclaims are legally sufficient and substantiated, for the reasons specified in ICM's concurrently filed opposition to Counterdefendants' motion to dismiss (which opposition is incorporated herein), and by the facts alleged in the pleadings and in the evidence in support of the instant opposition and on file in this action.

Therefore, ICM respectfully request the Court deny Counterdefendants' motion to strike in its entirety and award ICM its fees upon the denial of the motion.

Dated: January 14, 2013

Respectfully submitted,

GORDON & REES LLP

by _____

Richard P. Sybert
Hazel Mae B. Pangan
Justin H. Aida
Bret A. Fausett
Attorneys for Counterclaimant
ICM REGISTRY, LLC dba .XXX

**OPPOSITION TO COUNTERDEFENDANTS' SPECIAL MOTION TO STRIKE PER C.C.P. § 425.16
CASE NO.  CV 11-9514-PSG**

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2013, a copy of the foregoing document and was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail (N/A). Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| Kevin Elliot Gaut<br>Jean P. Nogues<br>Thomas P. Lambert<br>Mitchell Silberberg and Knupp LLP<br>11377 West Olympic Boulevard<br>Los Angeles, CA  90064<br>(310) 312-3179<br>Fax: (310) 312-3100<br>keg@msk.com<br>jpn@msk.com<br>tpl@msk.com<br><br>Attorneys for Plaintiffs<br>Manwin Licensing International<br>S.A.R.L. and Digital Playground, Inc. | Jeffrey A. LeVee<br>Eric P. Enson<br>Kathleen P. Wallace<br>Cindy Zone Reichline<br>Jones Day<br>555 South Flower Street, 50th Floor<br>Los Angeles, CA  90071<br>(213) 489-3939<br>Fax: (213) 243-2539<br>jlevee@jonesday.com<br>epenson@jonesday.com<br>kwallace@jonesday.com<br>creichline@jonesday.com<br><br>Attorneys for Defendant,<br>Internet Corporation for Assigned<br>Names and Numbers |
| J. Matthew Williams<br>Mitchell Silberberg and Knupp LLP<br>1818 N Street NE 8th Floor<br>Washington, DC  20036<br>(202) 355-7900<br>Fax: (310) 312-3100<br>mxw@msk.com<br>Attorneys for Plaintiffs<br>Manwin Licensing International<br>S.A.R.L. and Digital Playground, Inc. | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and executed on January 14, 2013, in the City of San Diego, State of California.

*/s/ Richard P. Sybert*

Richard P. Sybert

OPPOSITION TO COUNTERDEFENDANTS' SPECIAL MOTION TO STRIKE PER C.C.P. § 425.16
CASE NO.  CV 11-9514-PSG

ICM/1083510/14509283v.1