THOMAS P. LAMBERT (50952)
tpl@msk.com
JEAN PIERRE NOGUES (84445)
jpn@msk.com
KEVIN E. GAUT (117352)
keg@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs and Counterclaim Defendants Manwin Licensing International S.À.R.L., a Luxemburg Limited Liability Company (S.À.R.L.), and Digital Playground, Inc., a California Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION - ROYBAL FEDERAL BUILDING

| | |
|---|---|
| MANWIN LICENSING INTERNATIONAL S.À.R.L., a Luxemburg limited liability company (S.À.R.L.); and DIGITAL PLAYGROUND, INC., a California corporation,<br><br>Plaintiffs,<br>v.<br><br>ICM REGISTRY, LLC, d/b/a .XXX, a Delaware limited liability corporation; INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS, a California nonprofit public benefit corporation; and DOES 1-10,<br><br>Defendants. | CASE NO. CV11-9514 PSG (JCGx)<br><br>The Honorable Philip S. Gutierrez<br><br>**COUNTERCLAIM DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 (ANTI-SLAPP)**<br><br>Courtroom: 880 Roybal Federal Building<br><br>Date: February 11, 2013<br><br>Time: 1:30 p.m |
| AND RELATED COUNTERCLAIM | |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..... 1

II. ICM'S COUNTERCLAIMS ARISE FROM PROTECTED ACTIVITY ..... 2

A. Manwin's Press Release And Speech Denouncing .XXX Is Protected Activity ..... 3

B. Manwin's Alleged "Boycott" Is Protected Activity ..... 5

C. Manwin's Alleged Litigation Threats Are Protected Activity ..... 8

III. ICM DOES NOT MEET ITS SECOND STEP BURDEN ..... 10

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Batzel v. Smith*, No. CV 00-9590 SVW, 2001 U.S. Dist. LEXIS 8929 (C.D. Cal. June 5, 2001) ........ 11

*Birkner v. Lam*, 156 Cal. App. 4th 275, 67 Cal. Rptr. 3d 190 (2007) ........ 7

*Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 49 Cal. Rptr. 2d 620 (1996) ........ 11

*Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044 (E.D. Cal. 2008) ........ 11

*Flatley v. Mauro*, 39 Cal. 4th 299, 46 Cal. Rptr. 3d 606 (2006) ........ 7

*Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 106 Cal. Rptr. 2d 906 (2001) ........ 2

*Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 125 Cal. Rptr. 2d 534 (2002) ........ 8

*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184 Cal. App. 4th 1539, 110 Cal. Rptr. 3d 129 (2010) ........ 2

*Haneline Pac. Properties, LLC v. May*, 167 Cal. App. 4th 311, 83 Cal. Rptr. 3d 919 (2008) ........ 10

*Harrell v. George*, No. CIV S-11-0253 MCE DAD PS, 2012 U.S. Dist. LEXIS 119181 (E.D. Cal. Aug. 22, 2012) ........ 2

*Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal. App. 4th 941, 59 Cal. Rptr. 3d 48 (2007) ........ 7

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) ........ 7

*Navellier v. Sletten*, 29 Cal. 4th 82, 124 Cal. Rptr. 2d 530 (2002) ........ 7

*Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 73 Cal. Rptr. 3d 383 (2008) ........ 8, 9

*Oviedo v. Windsor Twelve Properties, LLC*, 212 Cal. App. 4th 97, ___ Cal. Rptr. 2d ___ (2012) ........ 11

*Price v. Stossel*, 590 F. Supp. 2d 1262 (C.D. Cal. 2008) ........ 10

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Roberts v. Los Angeles County Bar Ass'n*,
105 Cal. App. 4th 604, 129 Cal. Rptr. 2d 546 (2003) .......... 10

*Roberts v. McAfee, Inc.*,
660 F.3d 1156 (9th Cir. 2011) .......... 10

*Salma v. Capon*,
161 Cal. App. 4th 1275, 74 Cal. Rptr. 3d 873 (2008) .......... 2

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
No. C 09–1468, 2009 U.S. Dist. LEXIS 61825 (N.D. Cal. July 17, 2009) .......... 8

*Simmons v. Allstate Ins. Co.*,
92 Cal. App. 4th 1068, 112 Cal. Rptr. 2d 397 (2001) .......... 11

*Sipple v. Found. for Nat. Progress*,
71 Cal. App. 4th 226, 83 Cal. Rptr. 2d 677 (1999) .......... 5

**STATUTES**

California Code of Civil Procedure
§ 425.16 .......... 9
§ 425.16(e) .......... 1, 2, 12
§ 425.16(e)(1) .......... 1, 2, 8, 12
§ 425.16(e)(2) .......... 5, 8, 9
§ 425.16(e)(3) .......... 3, 4, 5, 6
§ 425.16(e)(4) .......... 6, 8

**OTHER AUTHORITIES**

Fedederal Rules of Evidence
Rule 12(b)(6) .......... 11
Rule 408 .......... 9

W. Rylaarsdam & L. Edmon, *Cal. Prac. Guide Civ. Pro. Before Trial*
§ 7:991 (Rutter Group 2012) .......... 8

# I. INTRODUCTION

In its Motion, Manwin demonstrated that, under the first step of the anti-SLAPP analysis, three distinct, non-incidental categories of allegations in ICM's state law Counterclaims constitute "protected activity" under California Code of Civil Procedure Section 425.16(e). This triggers ICM's burden under the second step to demonstrate with admissible evidence a probability of prevailing on such Counterclaims. Those three categories, any one of which is sufficient, are: (1) Manwin's allegedly false public press releases about this lawsuit and public denunciations of the .XXX TLD and the way ICM operates it; (2) Manwin's alleged boycotts of ICM's .XXX TLD through press releases, other speech, and related conduct; and (3) Manwin's alleged "non-negotiable" demands under threat of ensuing litigation if not met.

In its Opposition, ICM fails to establish that any of the three categories constitutes unprotected activity, much less all of them. As to the first category, ICM concedes by silence that Manwin's speech about the .XXX TLD is a matter of public interest and thus subject to the anti-SLAPP statute. It then resorts to arguing that its state law claims are not based on such speech despite repeated and very express Counterclaim allegations to the contrary. As to the second category, ICM argues that only "politically motivated" speech and related boycott conduct is protected by the First Amendment. But no such restriction appears in the First Amendment or the anti-SLAPP statue. As to the third category, ICM entirely ignores its prior allegations and sworn declaration testimony about "non-negotiable" demands under threat of litigation, and instead tries to recharacterize the discussions as "business development discussions" with "no logical nexus" to Manwin's later-filed antitrust claims. The effort fails, and the SLAPP statute applies because the discussions were in connection with potential judicial proceedings.

Because the three categories of conduct are protected by the anti-SLAPP statute, ICM must prove through ***admissible evidence***, not mere allegations, the probable validity of its claims. ICM concedes it cannot do so. It offers no evidentiary support for its claims whatsoever, and relies solely on its legally insufficient allegations. As a result, ICM's state law counterclaims must be stricken, and Manwin awarded its attorneys' fees.

## II. ICM'S COUNTERCLAIMS ARISE FROM PROTECTED ACTIVITY

As set forth in Manwin's Motion, and not contested by ICM, the anti-SLAPP statute applies even if a cause of action only ***in part*** challenges protected activities. *See*, *e.g.*, *Salma v. Capon*, 161 Cal. App. 4th 1275, 1287, 74 Cal. Rptr. 3d 873, 883 (2008) ("A mixed cause of action is subject to section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity."); *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184 Cal. App. 4th 1539, 1551, 110 Cal. Rptr. 3d 129, 139 (2010) ("Where, as here, a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 unless the protected conduct is 'merely incidental' to the unprotected conduct."); *Harrell v. George*, No. CIV S-11-0253 MCE DAD PS, 2012 U.S. Dist. LEXIS 119181 at * 16-17 (E.D. Cal. Aug. 22, 2012) (same).[1]

As noted above, ICM's state law counterclaims include three separate, non-incidental, categories of speech and conduct which constitute protected activities under Section 425.16(e). Any one alone is sufficient to satisfy the first test of the anti-SLAPP analysis. But ICM fails to establish that any of the three is unprotected.

---

[1] The rationale for this rule is obvious: "a plaintiff cannot frustrate the purpose of the SLAPP statute [by] combining allegations of protected and non-protected activity under the label of one 'cause of action.'" *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 308, 106 Cal. Rptr. 2d 906, 918 (2001).

### A. Manwin's Press Release And Speech Denouncing .XXX Is Protected Activity

As Manwin's motion established, public speech on a matter of public interest is protected activity under the anti-SLAPP statute. *See* Cal. Code Civ. Proc. § 425.16(e)(3) (public speech on an issue of public interest) and (e)(4) (conduct in furtherance of such speech). ICM does and cannot contest that legal standard. Nor does ICM contest (and in light of its extensive previous claims could not contest) that the .XXX TLD is a matter of public interest. As a result, Manwin's public speech about .XXX is protected. Implicitly so conceding, ICM resorts to arguing solely that its allegations about such speech are not the "factual predicates for ICM's state law counterclaims." ICM Opposition To Manwin's Motion To Strike (ECF Docket No. 78) ("Opp.") at 3:3-7, 6:6-20. That argument is demonstrably incorrect.

ICM's counterclaims specifically list what it calls "Manwin's Anti-Competitive and Unlawful Conduct." Amended Counterclaims (ECF Docket No. 65) ("CC") ¶¶ 29-46. At least two of the listed acts are Manwin's public speech about the .XXX TLD. *See id.* ¶ 38 ("***Manwin has publicly and privately denounced the .XXX TLD*** in the adult entertainment industry and engaged in an unfair and anti-competitive campaign against ICM in order to prevent ICM from commercializing .XXX and ***to interfere with ICM's existing and prospective contractual relations***.") (emphasis added), ¶ 45 ("Manwin has engaged in libel and trade defamation by publish[ing] false statements to third parties via press release that ICANN and ICM have engaged in an illegal scheme to eliminate competitive bidding and market restraints in violation of federal and state unfair competition laws.").

Later, ICM elaborates about the press release, alleging it was "about this very lawsuit" and "targeted to members of the adult entertainment industry, including ICM's actual and prospective customers…." CC ¶ 84. ICM then alleges

that the statements in the press release "were made with the intent to interfere with ICM's existing and prospective business relationships." *Id.* ¶ 85.

ICM expressly incorporates each of these allegations into its state law claims for "unfair competition" and "interference with prospective economic advantage." *See*, *e.g.*, CC ¶ 90 (incorporating by reference all prior allegations into state unfair competition claim); *id.* ¶ 93 ("Counterdefendants' business acts and practices are unlawful and unfair and in violation of California's unfair competition law because they have restrained trade and competition in violation of the antitrust laws and competition laws as more fully alleged above."); *id.* ¶ 94 ("Counterdefendants' business acts and practices are also unlawful and unfair in that they impermissibly interfere with ICM's prospective economic advantage"); *id.* ¶ 104 (incorporating by reference all prior allegations into claim for interference with prospective economic advantage).

These allegations are not mere oversight. Manwin raised in the required meet and confer session that ICM's state law claims relied on just this protected conduct, so that Manwin intended to make an anti-SLAPP motion. In response, ICM never contended that such conduct was not part of the its state claims. On the contrary, in response to the meet and confer, ICM filed Amended Counterclaims, which as explained above, continue expressly to assert state law claims based on the press release and Manwin's related denunciations of ICM. *See* Declaration of Michael Chait ¶¶ 1-7, Exs. 1-2. If ICM intended not to assert its state claims based on such conduct, its Counterclaims would have so alleged. ICM simply cannot hide from or ignore its own express allegations that the state law causes of action include Manwin's protected speech.

ICM does argue that the press release is not protected under the SLAPP statute because not a "fair and true report" of the litigation. Opp. at 6:21-7:178. But that is both wrong and irrelevant, for three reasons. First, whether or not the

press release is protected, ICM does not deny that Manwin's other speech "denounc[ing] .XXX" is protected. That other speech alone triggers SLAPP protection. Second, whether the press release is protected as a "report of litigation" under Section 425.16(e)(2) does not matter, because the press release is plainly protected as a "written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" under Section 425.16(e)(3). *See* Manwin's Motion To Strike (ECF Docket No. 76) ("MS") at 5:11-6:17. ICM does not and cannot argue otherwise.

Third, although the Court need not reach the issue, Section 425.16(e)(2) also protects the press release. Speech is protected under Section 425.16(e)(2) if in "connection with…an issue under review by a … judicial body." Section 425.16(e)(2) imposes no requirement that Manwin prove the speech is a "fair report" in order to meet the step 1 test. However, whether the report is "fair" may of course affect the success of plaintiff's proof under step 2 of the probable validity of a claim based on the report.

ICM relies on *Sipple v. Found. for Nat. Progress*, 71 Cal. App. 4th 226, 241-42, 83 Cal. Rptr. 2d 677, 686 (1999), which only confirms the point. *Sipple* found, under step 1, that a press report about a lawsuit was protected activity under Section 425.16(e)(2) with no requirement that defendant prove that the report was "fair." Plaintiff was thus forced to submit, under step 2, evidentiary proof of likelihood of success on the merits. *Id.* at 247. That in turn required him to prove that the litigation privilege was inapplicable because the report did fairly describe the lawsuit. *Id.* at 243. Plaintiff's evidence failed under step 2. *Id.* at 250. As explained below, so does ICM's, because it presents no evidence at all.

### B. Manwin's Alleged "Boycott" Is Protected Activity

As Manwin's Motion demonstrated, ICM's "boycott" allegations are also protected under the anti-SLAPP statute. MS at 6:18-7:11. ICM's boycott

allegations and state claims are based, first, on Manwin's December 2, 2011 press release announcing that it will not do business with .XXX. *See* CC ¶¶ 90, 104 (incorporating boycott press release allegations into state claims). Manwin's press release reiterates that it has filed a lawsuit challenging ICM's anticompetitive behavior, and then states its opinion that the ".XXX domain is an anti-competitive business practice that works a disservice to all companies that do business on the Internet." Declaration of Kate Miller In Support Of Manwin's Motion To Strike (ECF Docket No. 76-1) Ex. 1. The press release also announces that, based on that opinion, Manwin intends to cease certain business activities with .XXX. *Id*.

The press release is plainly protected under Section 425.16(e)(3) as public speech on a matter of public interest. The release expresses Manwin's strong disapproval of ICM's conduct, and describes further actions it will take to confirm that disapproval. ICM does not and cannot argue that the press release itself – as pure speech – is unprotected by the SLAPP statute.

ICM's other alleged boycott speech and activity, intended to protest ICM's anticompetitive behavior described in the press release, is also protected under Section 425.16(e)(4) as "conduct …. in furtherance of free speech." ICM concedes that "politically motivated" boycott conduct is protected, but contends that "other" boycott conduct is not. Opp. at 7:24-25, 8:20-25. In fact, neither the anti-SLAPP statute nor the First Amendment limits protection to "politically motivated" boycott conduct. *See*, *e.g.*, Cal. Code Civ. Proc. § 425.16(e)(4) (defining "protected activity" as, *inter alia*, "other conduct in furtherance of the … the constitutional right of free speech in connection ***with a public issue or an issue of public interest***.") (emphasis added). Even assuming Manwin's alleged "boycott" conduct were construed as not being "politically motivated,"[2] ICM does not cite to a single case so limiting anti-SLAPP protection.

---

[2] Complaints about the operation of .XXX are in fact political, at least in part. The majority of businesses, including Manwin, are opposed to .XXX for both political

Without any evidence, ICM also argues that "Manwin is simply trying to make money and protect its market dominance." Opp. at 8:26-28. But again, whether Manwin has some purported "economic interest" in the alleged boycott does not render its speech unprotected. *See*, *e.g.*, *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002) ("If speech is not 'purely commercial' – that is, *if it does more than propose a commercial transaction* – then it is entitled to full First Amendment protection.") (emphasis added); *Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal. App. 4th 941, 949, 59 Cal. Rptr. 3d 48, 54 (2007) ("If appellant's position that the prospect of some financial benefit from a publication places the material in the area of 'commercial speech,' it would include virtually all books, magazines, newspapers, and news broadcasts. There is no authority for so sweeping a definition.").[3]

---

and apolitical reasons, including but not limited to enhanced risks of censorship; unnecessary risks to intellectual property; and imposition of supra-competitive deadweight costs on businesses. *See*, *e.g.*, Manwin's First Amended Complaint (ECF Docket No. 26) ¶¶ 34, 71-83, 83(b).

[3] ICM also appears to argue that the "boycott" is unprotected merely because ICM alleges that it is illegal under the Sherman Act. Opp. at 7:24-26. However, Manwin denies that any "boycott" was "illegal" or a violation of the Sherman Act. ICM's mere allegations of illegality do not void Manwin's step 1 anti-SLAPP protection. Rather, ICM would have to present step 2 evidence of such illegality in order to avoid dismissal of its claims. *See*, *e.g.*, *Flatley v. Mauro*, 39 Cal. 4th 299, 316, 46 Cal. Rptr. 3d 606, 618 (2006) ("If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden [on the second step] to show a probability of prevailing on the merits."); *Navellier v. Sletten*, 29 Cal. 4th 82, 94, 124 Cal. Rptr. 2d 530, 541 (2002) ("[A]ny 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.'") (emphasis and bracket in original) (internal quotation marks omitted); *Birkner v. Lam*, 156 Cal. App. 4th 275, 285, 67 Cal. Rptr. 3d 190, 198 (2007) ("[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage … simply because it is *alleged* to have been unlawful or unethical.") (emphasis and bracket in original) (internal quotation marks omitted).

### C. Manwin's Alleged Litigation Threats Are Protected Activity

As established in Manwin's Motion (MS at 7:12-8:14), ICM's allegations about business discussions resulting in "threats" to file lawsuits are protected activity. *See* Cal. Code Civ. Proc. § 425.16(e)(1), (2), and (4); *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268, 73 Cal. Rptr. 3d 383, 394 (2008) ("Although litigation may not have commenced, if a statement concern[s] the subject of the dispute and is made in anticipation of litigation contemplated in good faith and under serious consideration, then the statement may be petitioning activity protected by section 425.16.") (internal citations and quotation marks omitted).

In its Opposition, ICM now argues that any discussions were mere "business development negotiations" having "no logical nexus" to any threatened lawsuit. Opp. at 9:14-11:26. The argument is flatly inconsistent with the allegations of ICM's Counterclaims and its own President's sworn testimony, both of which talk about express threats of this litigation.[4] For example, ICM's President has sworn that during discussions:

- "[Manwin's CEO] Thylmann stated that he would 'tie up ICM in litigation' if ICM did not meet all of his demands." Declaration of Stuart Lawley

[4] Moreover, even a *legitimate* factual dispute about litigation threats would not be sufficient to make the anti-SLAPP statute inapplicable. Manwin need only make a *prima facie* showing of protection under the first step of the anti-SLAPP analysis. If plaintiff wishes to contest that evidence, it must do so under step 2 as part of a showing that the entire claim will probably succeed. *See*, *e.g.*, W. Rylaarsdam & L. Edmon, *Cal. Prac. Guide Civ. Pro. Before Trial* § 7:991 (Rutter Group 2012) ("Defendant need only make a prima facie showing that plaintiff's complaint 'arises from' defendant's constitutionally-protected free speech or petition activity. The burden shifts to plaintiff to establish ***as a matter of law*** that no such protection exists.") (emphasis added) (*citing Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 458-459, 125 Cal. Rptr. 2d 534, 541–542 (2002)); *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No. C 09–1468 SBA, 2009 U.S. Dist. LEXIS 61825 at * 25 n. 7 (N.D. Cal. July 17, 2009) ("Unlike the plaintiff, the burden on the defendant is not an evidentiary one. All the defendant must do is show that the act underlying the plaintiff's cause fits one of the categories spelled out in [section 425.16(e)].") (internal quotation marks omitted), *aff'd*, 422 Fed. Appx. 651 (9th Cir. 2011).

In Support Of ICM's Motion to Strike Manwin's Complaint (ECF Docket No. 22) ("Lawley Decl.") ¶ 27

- "Thylmann said that if its demands were not met, Manwin would spend millions of dollars per year for the next several years tying up ICM in litigation." *Id*. at ¶ 30.
- "I understand that Thylmann [in earlier discussions] said Manwin would file a lawsuit against ICM, should the .XXX sTLD be approved by ICANN, so as to disrupt ICM's ability to conduct its business." *Id.* at 23.[5]

ICM's Counterclaims are explicit about the link between these threats and the subsequent lawsuit filed by Manwin, alleging for example that:

> Manwin's and Digital Playground's suit was making good on Manwin's threat to Dumas and Menegatti (at a meeting in 2010) and to ICM executives (during business negotiations in 2011) that Manwin would sue ICM to "mess them up." Indeed, during business negotiations in 2011 Manwin informed ICM that if Manwin's demands were not met, Manwin would spend a few million dollars a year for the next few years suing ICM.

CC at ¶ 21. *See also id.* at ¶¶ 21-23, 30, 55(e) (alleging Manwin attempted to extort ICM with threats of a lawsuit).[6] These alleged threats to file this litigation are plainly protected under Section 425.16(e)(2) and *Neville*.

---

[5] ICM suggests that anti-SLAPP protection is inapplicable because the parties did not sign any non-disclosure agreement. Opp. at 10:21-24. But Section 425.16 does not require any confidentiality agreement for anti-SLAPP protection. Nor does the settlement privilege. *See* Fed. R. Evid. 408.

[6] Curiously, ICM limits its "no logical nexus" argument "to counterdefendants' anti-trust claims in this action." Opp. at 11:23-26; Lawley Decl. ¶ 3. ICM never argues there was "no logical nexus" to ***a*** lawsuit. Obviously, neither the anti-SLAPP statute, the First Amendment, nor the litigation privilege depend on the particular legal theories of the threatened suit.

ICM's only purported authority (Opp. at 9:23-27), *Haneline Pac. Properties, LLC v. May*, 167 Cal. App. 4th 311, 319, 83 Cal. Rptr. 3d 919, 925 (2008), *modified by* No. G039782, 2008 Cal. App. LEXIS 1587 (Oct. 14, 2008), is plainly inapposite. *May* found the litigation privilege inapplicable to the parties' communications because "the tone and language [of the communications] were intended to encourage collaboration and agreement, not 'serious consideration' of litigation." *Id.* at 320. Indeed, one party's lawyer wrote that the communications included "no demand of or threat against" the other party, and thus "not even the …attorney construed his prior communications …as threats of, or in anticipation of, litigation." *Id.* at 319. The contrast with ICM's testimony and allegations could not be more plain.

## III. ICM DOES NOT MEET ITS SECOND STEP BURDEN

Since all (or at least one) of the three categories of allegations referenced above are protected, the anti-SLAPP analysis moves to step 2. Under step 2, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Roberts v. McAfee, Inc.,* 660 F.3d 1156, 1163 (9th Cir. 2011) (internal quotation marks omitted).

That burden must be met through competent admissible evidence. *See, e.g., Price v. Stossel*, 590 F. Supp. 2d 1262, 1266 (C.D. Cal. 2008) ("[A] plaintiff must present 'competent and admissible evidence' showing that he 'probably' will prevail. If he fails to meet this evidentiary burden, his complaint is stricken.") (internal citations omitted), *aff'd in part, rev'd in part on different issue*, 620 F.3d 992 (9th Cir. 2010); *Roberts v. Los Angeles County Bar Ass'n*, 105 Cal. App. 4th 604, 613, 129 Cal. Rptr. 2d 546, 551 (2003) ("Unlike demurrers or motions to strike, which are designed to eliminate sham or facially meritless allegations, at the pleading stage a SLAPP motion, like a summary judgment motion, pierces the

pleadings and requires an evidentiary showing."), *quoting Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073, 112 Cal. Rptr. 2d 397, 400 (2001).

As a corollary, to meet the step 2 burden, "[a] party cannot simply rely on the allegations in its own pleadings, even if verified, to make the evidentiary showing required in . . . motions under section 425.16." *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 656, 49 Cal. Rptr. 2d 620, 628 (1996), *overruled in part on different issue*, *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68, n. 5,124 Cal. Rptr. 2d 507, 519 n. 5 (2002). *See also Oviedo v. Windsor Twelve Properties, LLC*, 212 Cal. App. 4th 97, 109, ___ Cal. Rptr. 2d ___ (2012) ("The plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence."); *Batzel v. Smith*, No. CV 00-9590 SVW, 2001 U.S. Dist. LEXIS 8929, *18-19 (C.D. Cal. June 5, 2001) (same), *aff'd in part, vacated in part on different issue*, 333 F.3d 1018 (9th Cir. 2003); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1051 (E.D. Cal. 2008) (same), *aff'd in part, vacated in part on different issue*, 631 F.3d 1299 (9th Cir. 2011).

ICM utterly fails to meet these standards. It submits no admissible evidence whatsoever, relying solely only on its Counterclaim allegations, Opposition to Manwin's Motion to Dismiss Under Rule 12(b)(6), and Lawley's declaration that the recharacterized "business development discussions" were not the subject of a written confidentiality agreement. Opp. at 12:6-10. None of these come close to proving the probable validity of its claims through admissible evidence.

## IV. CONCLUSION

Manwin respectfully asks the Court strike each of ICM's state law causes of action, and award Manwin its reasonable attorney's fees under California Code of Civil Procedure Section 425.16(c).[7]

DATED: January 28, 2013

MITCHELL SILBERBERG & KNUPP LLP

By: /s/Kevin E. Gaut
Kevin E. Gaut
Attorneys for Plaintiffs and Counterdefendants

[7] Without citation, ICM asserts that it is entitled to attorney's fees if the motion is denied. ICM is simply wrong. A prevailing ***defendant*** is entitled to a ***mandatory*** fee award. Cal. Code Civ. Proc. § 425.16(c). A prevailing plaintiff may recover fees only if "a special motion to strike is frivolous or is solely intended to cause unnecessary delay." *Id.* This motion could never meet that standard, particularly given ICM's utter failure to submit ***any*** evidence in support of its claims.